Orval WOODROW, as Trustee for the Next of Kin of Terrance Paul Woodrow, Deceased, Appellant,

v.

Hugh J. TOBLER, et al., Respondents.

No. 47913.

Supreme Court of Minnesota.

Aug. 18, 1978.

___

John M. Steele, Minneapolis, for appellant.

Jardine, Logan & O'Brien and Graham N. Heikes, St. Paul, for respondents.

Heard before ROGOSHESKE, KELLY and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This is an action for wrongful death of a pedestrian by negligent operation of a motor vehicle, brought by trustee Orval Woodrow on behalf of decedent's next of kin, against defendants, Lonnie Victor Tobler, the driver of the automobile, and Hugh J. Tobler, his father. Minn.St. 573.02. We affirm the judgment of the district court dismissing this action.

The accident occurred in misty weather at about 12:30 a. m. on August 19, 1972, near the crest of a hill midway between the Glenmore and Heather Lane intersections, on Highway 12 east of Long Lake, Minnesota.

Defendant, Lonnie Victor Tobler, age 18, was driving his date, Cindy Wagner, home to Wayzata in his small sports car. Admitting to having one or two beers on two occasions that evening, he testified that he stopped drinking by about 10:30 p. m. A blood test administered at his father's request, at 2:30 a. m. at North Memorial Hospital, disclosed a blood alcohol level of .085 percent. Plaintiff's expert toxicologist, Dr. Gilbert Mannering, testified that Tobler's blood alcohol level at the time of the accident was probably between .109 and .121; he could not estimate its effect on reaction time, visual acuity, or coordination. Defendant and his passenger stated that he was not driving erratically, and that he maintained a steady speed within the posted speed limit.

The decedent, Terrance Paul Woodrow, age 23, was employed as a bartender at Mark's Bar & Grill in Loretto, Minnesota. At about 5 p. m. that evening, Woodrow telephoned his employer, Mark Peterson, to inform him that he would be unable to work his evening shift because he had been drinking. At about 8 p. m., Woodrow arrived at the bar, obviously intoxicated. Peterson instructed the bartender to "water" Woodrow's drinks, directed another employee to remove the distributor from Woodrow's car, and unsuccessfully urged Woodrow to rest in living quarters upstairs. Woodrow left the bar at about 10 or 11 p. m. with Mary O'Neill, an acquaintance and

former employee at Mark's, and her friend. They drove Woodrow to a bar in Long Lake, where O'Neill told the bartender to serve him soft drinks. Woodrow became upset and went outside. O'Neill and her friend could not locate him when they followed a short time later. Sgt. Marvin Daniels of the Orono Police Department saw Woodrow in Long Lake on two occasions between 11 and 11:30 p. m., attempting to hitchhike east along Highway 12. Daniels noted that Woodrow was hitchhiking in the roadway and told him to move closer to the curb.

At about 12:30 a. m., as Tobler was approaching the scene of the accident in the eastbound lane, Mary and Tom Martin were driving west. Although Tom, who was driving, averted his eyes to the side because of oncoming headlight glare, Mary briefly saw Woodrow "standing there in the middle of the road." Both heard the impact immediately after passing Woodrow and returned to give assistance. Tobler and his passenger testified that they saw Woodrow only immediately before impact, and that he was on the south side of the eastbound lane. Woodrow was wearing dark clothing. There were no street lights between the Glenmore and Heather Lane intersections with Highway 12.

Woodrow was taken to North Memorial Hospital, where he died of head injuries received in the accident. Tests performed on blood samples showed a blood alcohol content of 0.16 percent.

A jury trial was held from February 22, 1977, to March 2, 1977, in Hennepin County District Court. The trial court denied defendant's motions for a direct verdict interposed at the close of plaintiff's case and at the close of defendants' case.[1] Special verdicts returned by the jury found damages of $45,000, but apportioned negligence 85 percent against plaintiff. Accordingly, order for entry of judgment dismissing plain-

tiff's claim was filed March 10, 1977, and noticed March 11, 1977. On March 23, 1977, plaintiff filed and served notice of motion for new trial, set for April 5, 1977, and subsequently reset and heard April 25, 1977. The instant appeal is from the May 23, 1977 order denying plaintiff's new trial motion.

The appeal and cross-appeal raised the following issues: (1) whether the motion for a new trial was untimely heard; (2) whether the trial court erred in admitting police testimony that no ticket was issued to defendant; (3) whether the testimony by defendant's passenger that she had not criticized or reprimanded defendant's driving during the evening was properly admitted; (4) whether there was sufficient foundation to admit evidence of decedent's blood alcohol content; (5) whether the trial court properly refused plaintiff's requested instructions on the duty to reduce speed when pedestrian hazards exist and on the forfeiture of right-of-way when traveling at excessive speed; and (6) whether it was error to deny defendant's motion for a directed verdict. After full consideration of these issues, we conclude that the judgment and order of the district court should be affirmed.

1. We consider first defendant's contention that the plaintiff's motion for a new trial was untimely heard. Rule 59.03, Rules of Civil Procedure, provides that:

"A notice of motion for a new trial shall be served within 15 days after a general verdict or service of notice by a party of the filing of the decision or order; and the motion shall be heard within 30 days after such general verdict or notice of filing, unless the time for hearing be extended by the court within the 30 day period for good cause shown."

The timeliness of the *service* or initiation of the new trial motion is not in issue here; cases cited by defendant are not in point.[2]

---

1. Pursuant to Rule 106, Rules of Civil Appellate Procedure, defendants filed a notice of review on June 10, 1977, preserving objections to the denial of those motions.

2. *Weberg v. Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 239 Minn. 345, 59 N.W.2d 317 (1953), involved the failure to give timely notice of motion for new trial; *Gorder v. Sims*, 297 Minn. 346, 211 N.W.2d 369 (1973), involved a

On March 23, 1977, 12 days after the notice of filing the order for judgment, plaintiff filed and served his motion for a new trial. The hearing, originally set for April 5, 1977, was postponed until April 25, 1977, because of the unavailability of the trial judge. No formal order was entered; the hearing was referred-over by the special term judge.

On July 29, 1977, pursuant to Rule 127, Rules of Civil Appellate Procedure, defendants moved to dismiss the appeal on grounds that plaintiff's post trial motion had not been timely heard. That motion was denied, without prejudice to reassertion upon full appeal, by order of this court August 12, 1977. Thus, the issue in the instant appeal is whether the time for hearing was "extended by the court within the 30 day period for good cause shown," within the meaning of Rule 59.03.

The memorandum accompanying the order denying the new trial motion recites that:

"  *   *   * The motion was made within the time specified, but was not heard because the trial judge was on vacation and unavailable. The Court, therefore, believes it does have jurisdiction to hear the motion and has decided the same on the merits   *   *   *."

Although this issue is one of first impression under present Rule 59.03, in this regard the rule is similar to its predecessor, G.S. 1923 § 9326.[3] In *Cox v. Selover*, 165 Minn. 50, 205 N.W. 691 (1925), the motion for new trial was duly served within 15 days of the verdict, but the unavailability of the trial judge forced a second judge to continue the hearing and refer the matter to the trial judge. Although the hearing was finally held more than 30 days after the verdict, this court declined to vacate the order granting a new trial, noting a recital in the order that the hearing had been "  *   *   * continued by order of the court and stipula-

tion of counsel." 165 Minn. 51, 205 N.W. 692.

■■■ Rule 59.03 does not prescribe the form an extension for cause is to take. The general conditions for enlarging time limits under Rule 6.02, Rules of Civil Procedure, are expressly inapplicable. It is clear that the unavailability of the trial judge at the time of the motion constitutes "good cause" for extending the time. *Cox v. Selover, supra*; see, generally, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann. p. 755. While a written order extending the time for hearing a new trial motion is certainly preferable to the "administrative continuance" procedure, there is no indication that the basis of either would be substantially different, or that respondents' attorney would have received any earlier notification. The plaintiff failed to appeal from the entry of judgment; the denial of the motion for new trial is the sole basis for appeal. Since the new trial motion was ultimately *denied* anyway, we do not believe that the procedure used should be fatal to a consideration of the appeal.

■■■ 2. The admission of police testimony that no ticket was issued defendant was not, under the circumstances of this case, an abuse of discretion by the trial court.

At trial, plaintiff called Deputy William Voss, Hennepin County Sheriff's Office, the first law enforcement officer to arrive at the scene of the accident. Voss testified that, "I asked Mr. Tobler to take a blood test.   *   *   * [H]e consented." Voss was further asked to testify at length regarding his escorting defendant Tobler to North Memorial Hospital, parking in the police parking zone, having a technician draw the blood in his presence and seal it in a standard sheriff's office blood sample vial, and taking the vial to an evidence locker for later analysis by the Public Health Center Lab.

---

new trial order on the initiative of the trial court, under Rule 59.05.

**3.** G.S.1923 § 9326 reads:

"  *   *   * If the motion [for a new trial] is to be heard on the minutes of the court, it

shall be heard within thirty days after the coming in of the verdict or notice of the filing of the decision   *   *   *, unless the time be extended by written stipulation of the parties or by the court for cause   *   *   *."

On cross-examination, defendant inquired:

"Q. Now, do I assume correctly, Officer, that when you suggested that Mr. Tobler submit to this blood test that you had—you or any other officer that investigated this had not tagged or made any charge against Mr. Tobler?

"A. No.

"MR. STEELE: Objection, Your Honor, irrelevant and immaterial.

"THE COURT: Overruled.

"Q. (By Mr. Heikes) Is that true, Officer?

"A. Yes.

"Q. And so when you asked him to take this blood test, is it true that you were just asking him to take it as a matter of routine?

"A. His father had asked me if there was anything that would help them and—

"Q. You suggested the blood test?

"A. I didn't ask him. He said he'd like to have this blood test, any determination of blood content.

"Q. And so you suggested that and Mr. Tobler said, 'Fine'?

"A. Yes.

"Q. So that actually when you accompanied Mr. Tobler to the North Memorial Hospital for the blood test, it wasn't something that you as an officer had required Mr. Tobler to do. It was something you had suggested him to do, and he volunteered to do it?

"A. Yes."

In *Dosh v. Elioff*, 301 Minn. 169, 222 N.W.2d 326 (1974), a special verdict returned by the jury found both parties to an automobile-pedestrian accident 50 percent negligent; accordingly, judgment was entered for defendant. On appeal, this court reversed, holding it prejudicial error to have permitted the police to testify that no tags were issued defendant. Defendant claimed such evidence was necessary to rebut an inference of unlawful speed which the jury might make from testimony on the length of the skid marks. *Dosh* distinguished *LeClair v. Sickler*, 275 Minn. 320, 146 N.W.2d 853 (1966), a pre-comparative negligence automobile-pedestrian case which upheld a verdict for the defendant, despite police testimony that no traffic tickets were issued. There, this court emphasized that the testimony was introduced because the police stated that defendant acknowledged an unlawful speed when interviewed by them after the accident.

The contrast between *Dosh* and *LeClair, supra*, is a result of the application of different facts to a single general test. The issue is whether the probative value of the proffered testimony outweighs its capacity to mislead or prejudice the trier of fact. While "relevance" is liberally defined, it would appear that evidence of a decision whether or not to issue a traffic citation does little to further the inquiry, and in fact amounts to only a conclusory opinion, on the issue of negligence. Thus, in most cases this nominal relevance is substantially outweighed by the danger that the jury will be misled and assign undue weight to the evidence.

In the instant case, however, as in *LeClair v. Sickler*, a fuller police explanation became highly relevant to rebut plaintiff's detailed blood test inquiry and its attendant inference that defendant's actions or demeanor had prompted an arrest or citation. Moreover, unlike *LeClair v. Sickler*, this sensitive line of inquiry was brief and apparently not emphasized in opening or closing arguments of counsel. Finally, unlike *Dosh v. Elioff, supra*, there is no suggestion that any error in admitting the evidence was prejudicial; the issue of relative negligence was not close, in the minds of the jury.

■ 3. Plaintiff argues that testimony by defendant's passenger that she had not criticized or reprimanded defendant's driving during the evening was improperly admitted.

Defendant's passenger, Cindy Wagner, acknowledged, over objection by plaintiff's counsel, that she had not criticized or repri-

manded defendant's driving at any time that evening. On appeal, plaintiff contends that the testimony gives rise to a negative inference of an impermissible opinion on an ultimate factual issue, i. e., defendant's negligent operation of a motor vehicle.

Clearly, the testimony elicited is one step removed from a direct statement of the witnesses' opinion of defendant's driving, an opinion which may have been inadmissible as evidence at the time of this trial.[4] Like most circumstantial evidence, it is intended to supply reasonable inferences on the ultimate issues for jury resolution. It was relevant to the inquiry, and there is no indication that its weight was beyond the capability of the jury to evaluate. Wagner testified that she was 16 years old, had recently acquired a learner's driving permit, and had suffered a memory lapse in a later accident.

■ 4. We find sufficient foundation to admit evidence of the results of the tests of the decedent's blood.

At trial, plaintiff raised objections, repeatedly sustained, to the insufficiency of the foundation for evidence of the decedent's blood alcohol content. Robert DeGregory, a toxicology examiner with the Hennepin County Medical Examiner's Office, testified with regard to the Sunshine and Nenad analyses, the procedures employed, the machinery and solutions used, and the standards (including a sealed ampul prepared by the American Society of Clinical Pathology) compared before the trial court would admit the evidence of the results of the blood tests.

Plaintiff's objections, based on DeGregory's acknowledged lack of technical familiarity with the internal operation of a spectrophotometer, place an unrealistic foundation requirement on the introduction of the test results. See, *State, City of St. Louis Park v. Quinn*, 289 Minn. 184, 182 N.W.2d 843 (1971). The details of the operation of the spectrophotometer, a laboratory device which analyzes substances by their light-ab-

sorption qualities, would be significant insofar as it related to test accuracy. Here, however, DeGregory testified that a number of standard solutions, of known alcohol level, are prepared and submitted to the testing process along with the blood samples. Additionally, a sealed control ampul of known alcohol content is also introduced to the machine. Thus, the spectrophotometer does not directly disclose the alcohol level in the sample; it offers a simultaneous comparison between known and unknown solutions, which must be interpreted. DeGregory's qualifications as a graduate chemist with several years' experience in blood testing were never challenged. The decision to permit his testimony, following extensive examination, was not error.

5. The next issue is whether it was error for the trial court to refuse requested instructions on (a) the duty to reduce speed when pedestrian hazards exist and (b) the forfeiture of vehicle right-of-way when traveling at excessive speed.

On the duty to reduce speed when pedestrian hazards exist, plaintiff requested that the jury be instructed:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"The statute provides the driver of any vehicle shall, consistent with the requirements of said statute, drive at appropriate reduced speed when special hazards exist, *with respect to pedestrians or other traffic, by reason of* weather or highway conditions." (Emphasis added.)

The trial court gave the following instruction:

"No person shall drive a vehicle on a highway at a speed greater than is rea-

---

**4.** An opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue, under the new Rule 704, Rules of Evidence, effective July 1, 1977.

sonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"The driver of any vehicle shall consistent with the requirement drive at an appropriate reduced speed when special hazards exist by reason of weather or highway conditions."

On vehicle right-of-way, the trial court instructed as follows:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway. Pedestrians when walking along a roadway shall walk near the left side of the roadway giving way to oncoming traffic."

It refused to give plaintiff's proposed "forfeiture of right-of-way" instructions:

"The Statute imposing the obligation upon a driver to reduce his speed in appropriate circumstances is applicable even to those drivers having the right of way, and travel at a speed which is unlawful results in loss of the right of way.

"A motorist loses his right of way privileges by unlawful conduct such as a violation of speed statutes.

"A driver forfeits his right of way by traveling at an unlawful speed."

In general, it is not error to refuse instructions whose substance is adequately contained in the general charge[5] or instructions without support in the evidence.[6] Deletion of reference to pedestrian hazards was appropriate in the absence of evidence that the driver should have appreciated the likelihood of their presence apart from the intersections. References to speeding were marginally relevant in the context of the instant case, since plaintiff claimed that the statutory speed limit was excessive in light of the road conditions at the time. However, the instruction given fairly reflects the requirement that drivers maintain due care, the general theory of plaintiff's case.

6. Lastly, we consider whether it was error to deny defendant's motions for a directed verdict.

Defendants unsuccessfully moved for a directed verdict at the conclusion of the plaintiff's case, and at the conclusion of their own case.

Generally, the standard applied in an appeal from a denial for a motion for directed verdict is whether the evidence and its inferences could have reasonably sustained a contrary verdict. Cf., *Clark v. Chicago & North Western Railway Co.*, 226 Minn. 375, 33 N.W.2d 484 (1948). In comparative negligence cases, however, where the plaintiff may prevail with almost 50 percent negligence, this court has maintained a clear reluctance to intervene in the decision to permit the jury to apportion fault. *Riley v. Lake*, 295 Minn. 43, 58, 203 N.W.2d 331, 340 (1972); See, also, *Steinhaus v. Adamson*, 304 Minn. 14, 228 N.W.2d 865 (1975). The decision to submit the question to the jury in this case was without error and without prejudice.

Affirmed.

5. *Poppenhagen v. Sornsin Const. Co.*, 300 Minn. 73, 81, 220 N.W.2d 281, 286 (1974); *Smith v. The Kahler Corp. Inc.*, 297 Minn. 272, 211 N.W.2d 146 (1973); *Hovey v. Wagoner*, 287 Minn. 546, 177 N.W.2d 796 (1970); *Moosbrugger v. McGraw-Edison Co.*, 284 Minn. 143, 158, 170 N.W.2d 72, 81 (1969); *Stall v. Christensen*, 277 Minn. 71, 75, 151 N.W.2d 764, 766 (1967); *Hammond v. Minneapolis Street Ry. Co.*, 257 Minn. 330, 101 N.W.2d 441 (1960);

*Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954).

In fact, general charges are preferred to more specific instructions. *Lhotka v. Larson*, 307 Minn. 121, 127, 238 N.W.2d 870, 875 n. 16 (1976); See, also, *Waldstein v. Amann*, 259 Minn. 511, 516, 108 N.W.2d 215, 218 (1961).

6. *Lauer v. Loecken*, 295 Minn. 345, 347, 204 N.W.2d 817, 818 (1973); *Manion v. Tweedy*, 257 Minn. 59, 100 N.W.2d 124 (1959).