WAHL, Justice.
Economy Fire & Casualty Company (Economy), having brought this declaratory judgment action, appeals a judgment determining that, under the terms of a homeowner’s insurance policy, it was required to provide a defense for its insured, Richard Iverson, in a tort suit brought by Orville Olson. The trial court concluded that the policy provision which excluded acts “expected or intended by the insured” did not exclude coverage for deliberate acts taken in lawful defense of person or property but did not decide the indemnity issue. The court of appeals affirmed. Economy Fire & Casualty Co. v. Iverson, 426 N.W.2d 195 (Minn.App.1988). We find that Economy is required to provide a defense under its contract of insurance and accepted principles of insurance law, but has no obligation to indemnify because the jury finding of self-defense extinguishes liability on the part of the insured. Accordingly, we affirm in part and reverse in part.
The tort suit underlying this action arose from a May 24, 1985 shooting incident at Iverson’s home, where several of Iverson’s friends had gathered that evening for drinks after work. Olson arrived as the uninvited guest of a mutual friend and did not know Iverson. Olson was intoxicated and argumentative and attempted to free Iverson’s pet cougar and bobcat from their cages, so that he could fight them. Iver-son prevented the cats’ release. Olson tried to buy the animals so he could kill them. When told to leave the cats alone, Olson threatened to kill everyone present. Iverson ordered Olson to leave and struck him. The two scuffled and Olson was ejected. As he left, Olson threatened to return and kill Iverson.
Olson did return to Iverson’s house approximately two hours later in the evening and approached the side door. Iverson was speaking on the phone with his father when he saw Olson approach. At his father’s suggestion, Iverson retrieved two guns from the upper floor, eventually discarding one and approaching the door with a loaded .22 semi-automatic rifle. Olson claims, as he knocked on the side door, Iverson opened the door and shot him. Iv-erson claims Olson pushed open the door, entered the house and grabbed the gun, which went off in the struggle. Olson fell outside the door, but managed to return to his car and drove home. Olson was hospitalized that night and the bullet was removed. Four hours after the shooting, Olson’s blood alcohol level was .23.
Olson and his wife commenced a tort action against Iverson on June 17, 1985, alleging negligence, intentional assault (battery) and loss of consortium. Iverson tendered defense of the action to his insurance company, Economy, in accordance with the terms of his $100,000 homeowner’s policy. Economy retained an attorney to represent Iverson under a reservation of rights. The attorney filed an answer to the Olson complaint affirmatively alleging, inter alia, self-defense.
Economy initiated this declaratory judgment action November 11, 1985, alleging that it had no obligation to defend or indemnify Iverson because the damages were not caused by an “occurrence” and, in any event, were excluded under the insurance contract as actions “intended or ex *826 pected by the insured.” Economy asked to be released from any duty to defend or indemnify Iverson in the underlying tort suit. Trial- on the declaratory judgment action began June 1, 1987. While the jury was deliberating, Iverson and Olson entered a settlement agreement, in the tort suit, of the type recognized in Miller v. Shugart, 316 N.W.2d 729 (Minn.1982). In that agreement, Iverson admitted to negligence resulting in damages to the Olsons in the sum of $250,000 and the Olsons agreed to limit their recovery to the proceeds of Iverson’s homeowner’s insurance policy.
On June 4, 1987, the jury in the declaratory judgment action returned a special verdict form containing two questions.
1. Did Richard Iverson expect or intend to cause bodily injury to Orville Olson in connection with the discharge of the weapon on May 24, 1985?
Answer: Yes.
2. Did Richard Iverson injure Orville Olson in the course of the lawful defense of his person or property?
Answer: Yes.
On the basis of this verdict and the court of appeals decision in Western Fire Ins. Co. v. Persons, 393 N.W.2d 234 (Minn.App.1986), the trial court ordered Economy to provide Iverson with a defense in the (now settled) tort action, but made no finding regarding the duty to indemnify. Economy’s post-trial motions to amend the order or for judgment notwithstanding the verdict were denied. The court of appeals affirmed.
We are asked to determine whether Economy is required by the insurance policy in question to defend and indemnify Iverson in this case.
The policy provides in relevant part:
Coverage E — Personal Liability
If a claim is made or. a suit is filed against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice, even if allegations are groundless, false or fraudu-. lent * * * *
An “occurrence” is defined in the policy as “an accident including exposure to conditions, which results, during the policy period, in: a) bodily injury, or b) property damage.” The policy establishes that personal liability coverage under Coverage E does not apply to bodily injury or property damage “which is expected or intended by the insured.”
Economy urges this court to reverse the lower court’s finding of the duty to defend, arguing that requiring a defense forces the insurer to await the possible assertion of an affirmative defense before establishing its obligations under the insurance contract. Not so.
The duty to provide a defense is based on the allegations contained in the plaintiff’s complaint. An insurer must defend where any part of the claim is arguably within the scope of policy coverage. Brown v. State Auto & Cas. Underwriters, 293 N.W.2d 822, 825-26 (Minn.1980). This is a broader duty than the duty to indemnify, and this court has held an insurer should provide the defense while reserving its right to contest coverage based on facts developed at trial. Id. In this instance, Olson’s complaint alleged one count of negligence, which, if proven, would, even under Economy’s interpretation of the policy, constitute an “occurrence” and would fall within the scope of Iverson’s policy coverage. “Where the allegations of a complaint state a cause of action within the terms of policy coverage, the insurance company must undertake to defend the insured.” Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 332-33, 204 N.W.2d 426, 429 (Minn.1973) (citing Christian v. Royal Ins. Co., 185 Minn. 180, 240 N.W. 365 (1932)) (footnote omitted). Economy is not faced with a situation in which the insurer becomes obligated to defend based on an affirmative defense. Rather, Economy seeks to be excused from its obligation to defend based on the affirmative de *827 fense.[1] This we decline to allow. We hold that the insurer, Economy, owes a duty under its contract of insurance to defend its insured in the underlying tort action based solely on the allegations of the plaintiffs complaint which fall within the scope of the policy coverage. Accordingly, Economy must pay the legal costs incurred by Iverson up to the time the tort suit was settled. Economy must also pay its insured’s legal costs in enforcing the contract obligation of defense in this declaratory judgment action. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966). Morrison stands for the proposition that, “where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden.” Lanoue v. Fireman’s Fund Am. Ins. Cos., 278 N.W.2d 49, 55 (Minn.1979).
The duty to defend is not disposi-tive, of course, of whether a duty exists to indemnify. Economy argues that the jury found an intent by Iverson to injure which makes the shooting an intentional act excluded from coverage and absolves Economy of the duty to indemnify. This argument is complicated by the settlement agreement in which Iverson admitted negligence, as well as by the trial court’s silence on the issue of indemnity. The court of appeals concluded that the finding of self-defense collaterally estopped any party to the declaratory judgment action from challenging that issue, but suggested that the issue of negligent use of too much force might be tried in a subsequent tort action. Both Iverson and Olson argue that the question of indemnity is premature, and therefore not properly before this court, because no garnishment action has begun.
It is, of course, correct that no garnishment action has been filed to enforce the judgment entered on the Miller-Schugart agreement. Nevertheless, the question of indemnity has been raised, and can and should be disposed of here. The jury in the declaratory judgment action found that Iv-erson’s actions were taken in the lawful defense of self or property.[2] The verdict conclusively determines that Iverson’s shooting of Olson in self-defense was not an act which gave rise to liability. This verdict is binding on Olson, because the declaratory judgment action brought by Economy named both Iverson and Olson as defendants and determined Economy’s liability to both parties. It would be an exercise in futility and wasteful besides to require Olson to bring what must ultimately be an unsuccessful garnishment action. Olson has already had his claim against Economy adjudicated and no liability lies.
The fact that the coverage issue has been raised does not oblige us to reach that issue and determine whether self-defense is an exception to the intentional acts exclusion. Judicial discretion indicates that we should not decide any issue not necessary for the disposition of a case. The matter of coverage is such an issue in this case.[3] The question of whether self-defense is an exception to the intentional acts exclusion is moot. We hold that under these circumstances, the insurer has no obligation to indemnify because the jury finding of self-defense extinguished liability on the part of the insured.
Affirmed in part; reversed in part.

. Whether the assertion of an affirmative defense could create an obligation to defend where one would not otherwise exist is at best speculative. That is not this case, and this opinion does not decide that issue.

. Prior to deliberations, the judge instructed the jury consistently with Minn.Stat. § 609.06 and JIG 506 that a person has a right to use reasonable force in self defense. The jury verdict of self-defense, therefore, necessarily encompasses a finding that the degree of force used was reasonable, providing no basis for a subsequent determination of “negligent use of too much force.” Economy, 426 N.W.2d at 200, n. 2.

.We can conceive of some future case involving a claim of self-defense, in which the injured party seeking compensation was not the attacker, as Olson was in this case, but was instead an innocent third-party. Whether such a bystander injured in the course of lawful defense of self or property would be excluded from recovering from a homeowner’s policy is a question which would be affected by our overreaching to decide the question of indemnity here.