**SPICER, WATSON & CARP,**
**et al., Respondents,**

v.

**MINNESOTA LAWYERS MUTUAL**
**INSURANCE COMPANY,**
**Appellant,**

**The Ohio Casualty Insurance Company,**
**Dean Witter Reynolds, Inc., Larry**
**L. Larson, Respondents.**

**No. C2–92–2130.**

Court of Appeals of Minnesota.

July 6, 1993.

---

Fred Jacobberger, Molly J. McCarragher, Gilsdorf & Jacobberger, St. Paul, for Spicer, Watson & Carp, et al.

Charles E. Lundberg, John M. Degnan, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Minnesota Lawyers Mut. Ins. Co.

Stephen J. Foley, Foley & Mansfield, Minneapolis, for Ohio Cas. Ins. Co.

Scott E. Richter, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Dean Witter Reynolds, Inc.

Margaret K. Savage, Briggs & Morgan, Minneapolis, for Larry L. Larson.

Considered and decided by NORTON, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

NORTON, Judge.

Respondent Larry Larson sued Peter Watson and respondent Dean Witter Reynolds, Inc. for mismanaging a trust which named Larson as the beneficiary. Appellant Minnesota Lawyers Mutual Insurance Company (MLM) reluctantly agreed to defend Watson, indicating its view that Watson's behavior had been fraudulent. Watson then commenced a declaratory judgment action to compel MLM to fully defend him. The trial court awarded attorney fees to Watson because MLM acted in bad faith. We reverse.

### FACTS

As a result of the settlement of a personal injury lawsuit brought by Larry Larson, a $2.2 million trust was created naming attorney Peter Watson as trustee. Because of Larson's spending habits, Watson's alleged mismanagement, and Dean Witter's allegedly risky investments, the trust lost a great deal of its value, and by August 1988 its net equity was only $387,-000.

Minnesota Lawyers Mutual Insurance Company (MLM) was Watson's law firm's professional liability carrier. Before 1988, the liability limit on the policy was $100,-000. In 1988, because of his concern that Larson's relatives might sue him for malpractice and because insurance rates had

dropped, Watson requested (and MLM granted) an increase in limits from $100,000 to $300,000. Because management of the trust was such a large portion of his practice (and malpractice exposure), Watson asked Larson to pay for the increase in premiums. The following year, the limit was raised to $500,000.

In 1989, Larson sued Watson and Dean Witter for malpractice and negligence in mismanaging the trust. MLM provided a defense to Watson. In October 1990, however, MLM determined that Watson had acted fraudulently by misrepresenting his known potential liability when submitting the forms to increase the liability limits. MLM sent a letter to Watson stating that it would bring an action to void the policy, but that MLM would continue to defend Watson in the underlying action. Watson immediately commenced a declaratory judgment action against MLM, demanding that it cover the full current $500,000 limit. MLM's motion for summary judgment was denied. Watson also moved for summary judgment, but the trial court refused to consider the motion because of procedural problems.

At trial in the declaratory judgment action, both parties moved for a directed verdict at the close of MLM's case. Both motions were denied. The jury returned a verdict in favor of Watson.[1] Motions by MLM for JNOV were denied.

In post-trial proceedings, the trial court held MLM liable for Watson's attorney fees on the grounds that applicable insurance case law warranted the fees and because MLM acted in bad faith in denying Watson's claim. The trial court did not provide a memorandum to explain its decision. (The underlying action between Larson and Watson was later settled.) MLM appeals only the award of attorney fees.

## ISSUES

I. When an insured commences a declaratory judgment action against a liability insurer to establish coverage, are attorney fees to be awarded when the insurer

fulfills its duty to defend in the underlying action?

II. Did the trial court abuse its discretion in awarding attorney fees as a sanction under Minn.Stat. § 549.21 where the trial court did not follow *Uselman* procedural guidelines?

## ANALYSIS

### I. Insurance law

#### A. Standard of review

■ Where there is no dispute of fact, whether attorney fees are proper in a declaratory judgment case is decided by the court. As it is a matter of law, this court may review the trial court's decision de novo. *See Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 713–14 (Minn.1991).

#### B. Applicable law

■ Ordinarily, attorney fees may not be recovered unless there is statutory authority for the recovery. *Morrison v. Swenson,* 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966). An exception is made when an insurance company refuses to defend an insured in violation of the insurance contract:

> However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as the result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

*Id.* at 138, 142 N.W.2d at 647 (citation omitted).

Attempts to expand this *"Morrison* exception," as it has come to be known, have been unsuccessful. No attorney fees were allowed in a first-party action for disability payments. *Abbey v. Farmers Ins. Exch.,* 281 Minn. 113, 160 N.W.2d 709 (1968). Attorney fees were also disallowed when an

---

1. Throughout the rest of this opinion, "Watson" is used to refer collectively to respondents Peter Watson and his law firm of Spicer, Watson & Carp.

insured allowed default judgment to be entered and was not seeking to recover costs of defense litigation or to force the insurer to defend. *Rent–A–Scooter, Inc. v. Universal Underwriters Ins. Co.*, 285 Minn. 264, 173 N.W.2d 9 (1969); *see also Lanoue v. Fireman's Fund Amn. Ins. Cos.*, 278 N.W.2d 49, 55 (Minn.1979) (detailing development of the *Morrison* exception).

In *Wondra v. American Family Ins. Group*, 432 N.W.2d 455 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989), this court permitted attorney fees in declaratory judgment actions to determine coverage, even in the absence of a duty to defend, under a statute permitting any "necessary or proper" relief in declaratory judgment actions. *See* Minn.Stat. § 555.08 (1988). The supreme court indirectly reversed *Wondra* in *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709 (Minn.1991). In *Garrick*, a no-fault claimant demanded attorney fees after winning a declaratory judgment action to establish coverage against his own insurer. After detailing the history of the *Morrison* exception, the court said:

> While there is great equity in plaintiffs' request for attorney fees, we decline to extend the award to cover attorney fees beyond the typical *Morrison*-type exception, i.e., fees incurred as a direct loss incident to the breach of a contractual duty to defend. For over 100 years, the law in Minnesota has been that, absent a contractual agreement or statute, a party cannot collect attorney fees. The statute cited by plaintiffs in this case, Minn.Stat. § 555.08, simply cannot be extended to provide for attorney fees in a case such as this. If the change in Minnesota's historical doctrine is to be made, it seems to us that this argument ought to be directed to the legislature.

*Id.* at 714 (citations and footnote omitted). This court has generally applied *Garrick's* interpretation of the *Morrison* exception. *See Wood Goods Galore v. Reinsurance Ass'n*, 478 N.W.2d 205, 210 (Minn.App. 1991), *pet. for rev. denied* (Minn. Jan. 30, 1992); *Empire Fire & Marine Ins. Co. v. Carlson*, 476 N.W.2d 666, 668–69 (Minn. App.1991).

In the last few years, a second, minority line of cases has emerged. In *Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824 (Minn.1989), an insurer provided a full defense to its insured but brought a declaratory judgment action asking the court to relieve the insurer of its duty to defend due to an "intentional act" exclusion. The supreme court held that the insurer had to pay both the insured's defense costs in the underlying tort action and the insured's defense costs in the declaratory judgment action. *Id.* at 826–27. Justice Simonett concurred in this result, stating that because the decision in the declaratory judgment action had the effect of deciding the underlying action, attorney fees in the declaratory judgment action were appropriate. *Id.* at 830–31 (Simonett, J., dissenting in part). *See also S.G. v. St. Paul Fire & Marine Ins. Co.*, 460 N.W.2d 639 (Minn. App.1990), *pet. for rev. denied* (Minn. Nov. 28, 1990) (applying *Economy Fire*).

The conflicts between these two lines of cases have not been resolved by an appellate court. *Garrick* is more recent than *Economy Fire* but does not cite it. No case has cited *Economy Fire* since *Garrick*, and *S.G.* has never been cited on the issue of attorney fees.

Watson suggests that *Garrick–Empire Fire* and *Economy Fire–S.G.* are distinguishable in that the former cases involved first-party claims (such as no-fault), while the latter cases involved third-party claims. Watson argues that the courts have therefore decided that attorney fees are always permitted in third-party actions but always prohibited in first-party actions.

Watson's theory does not completely distinguish the lines of cases. In a first-party action, there is no underlying case which must be defended by the insured (or by the insurer on the insured's behalf). Because the insurer has no duty to defend in a first-party action, the *Morrison* exception is therefore always inapplicable because the insured will never incur costs that should have been borne by the insurer. In a third-party action, where the insurer *fails* to

defend in the underlying case, the case law is also unanimous in holding that the insurer must pay for the insured's declaratory judgment action costs. However, in a third-party action where the insured does not undertake its own defense, whether because the insurer defends or because the insured accepts a default judgment, the cases are still split: *Economy Fire* would allow attorney fees for the declaratory judgment action, while *Rent–A–Scooter* would not. *Rent–A–Scooter's* result would be consistent with the holdings or dicta of every case except, of course, *Economy Fire* and *S.G.*

### C. Applying the law

Not surprisingly, Watson emphasizes the *Economy Fire* rule and MLM emphasizes the *Garrick* rule. An examination of the policy reasons and specific facts reveals that the *Garrick* rule should be applied.

■ Where a liability insurance policy provides that the insurer will defend the insured, the arrangement benefits both parties. The insurer is assured that its financial interests are protected, and the insured is relieved of the financial burden of providing the defense. If the insurer wrongfully refuses to provide a defense, the insured loses the benefit of the bargain by incurring litigation costs that the insured should not have been required to absorb. If the insured is then forced to incur litigation costs to force the insurer to fulfill its duty to defend, these costs are recoverable as damages stemming from the insurer's breach. *Morrison*, 274 Minn. at 138, 142 N.W.2d at 647; 7C John A. Appleman *Insurance Law & Practice*, § 4691 (Berdal ed. 1979). This rationale would not be advanced by granting attorney fees in this case. MLM had not yet breached any term of its insurance contract, so Watson's costs in his declaratory judgment action could not be seen as damages resulting from any breach. As MLM's letter to Watson questioning coverage firmly stated that it would continue to defend Watson, no breach or even anticipatory breach is present in these facts.[2]

The supreme court has frequently encouraged insurers to bring declaratory judgment actions to determine coverage before an underlying suit goes to trial or suffer the risk of paying the insured's defense costs for both the underlying action and a later declaratory judgment action. *See, e.g., Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161 (Minn.1986); *Grain Dealers Mut. Ins. Co. v. Cady*, 318 N.W.2d 247, 249 n. 3 (Minn.1982).

This incentive is not advanced by the *Economy Fire* rule. Rather than encouraging insurers to defend underlying actions (or encouraging insurers to bring a declaratory judgment action to see if they must defend), the *Economy Fire* rule discourages that action. Because the insurer would be forced to pay an insured's attorney fees if the insurer lost the declaratory judgment action *before* trial in the underlying action, the insurer would be at least as well off refusing to defend and taking its chances in a declaratory judgment action *after* the underlying action.

Another consideration is that Watson was the party bringing the declaratory judgment action. Watson argues that its action was appropriate in view of MLM's letter refusing $500,000 coverage. However, Watson's approach opens the door to allowing insureds to sue insurers any time the insurer defends under a reservation of rights. As the law forbids complaints from specifying damages in excess of $50,000, Minn.R.Civ.P. 8.01, insurers must defend nearly every large claim under a reservation of rights. The *Economy Fire* rule

**2.** Watson argues that if the *Garrick* rule is followed, an insurer could half-heartedly defend the underlying claim in order to provoke the insured's declaratory judgment suit to establish coverage, and that this half-hearted defense would justify the award of damages in the declaratory judgment action. However, these are not the present facts. No one disputes that MLM provided a full defense in the underlying action. In other cases where the insurer's conflict of interest prevents (or seriously discourages) it from providing a full defense, the insured already has the remedy to request independent counsel at the insurer's expense. *See Mutual Serv. Cas. Ins. Co. v. Luetmer*, 474 N.W.2d 365, 368–69 (Minn.App.1991). In any case, it is sufficient to say that this is not the case here.

would encourage insureds to bring a risk-free declaratory judgment suit in every large claim, regardless of whether the insurer has threatened a breach of its duty to defend.

In sum, the *Garrick* rule will be followed in this case, and the trial court is reversed on this ground.

## II. Minn.Stat. § 549.21

■ The trial court also cited Minn.Stat. § 549.21, subd. 2 (1992) as grounds for its award of attorney fees. The statute grants the court discretion to award attorney fees and costs to a party when an adverse party or attorney "acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed fraud upon the court." *Id.*

The trial court did not provide a memorandum explaining MLM's bad faith in this litigation. Watson suggests that MLM's bad faith exhibited itself in an alleged failure to follow internal guidelines governing investigation of claims, an alleged failure to investigate the claim before sending a letter to Watson questioning coverage, and the apparent weakness of MLM's case at trial. (The jury took only 22 minutes to reach a verdict.) MLM argues that it did have real evidence to support its claim in the form of inculpatory documents, and the fact that the jury was able to reach a quick decision is, in itself, not evidence of bad faith.

■ However, the fact that we must speculate as to the nature of MLM's bad faith suggests that there is something wrong with the award. The purpose of sanctions is to deter baseless litigation, frivolous claims and defenses, harassment and other "unnecessary delay or needless increase in the cost of litigation." Minn.

Stat. § 549.21, subd. 2; *Uselman v. Uselman*, 464 N.W.2d 130, 142 (Minn.1990). Because sanctions can have such a deterrent value only when parties are warned of their sanctionable conduct and have time to correct it, our supreme court has established a set of procedural guidelines to be followed by a trial court considering sanctions. These guidelines include early notice of the possibility of sanction and the reason for its imposition, an opportunity to respond to that notice, and (if necessary) a hearing to discuss the appropriateness of sanctions. *Uselman*, 464 N.W.2d at 143–44.[3]

None of these safeguards were followed in this case. Indeed, MLM was led to believe that its conduct was appropriate: motions for summary judgment were not granted, the trial court stated in pretrial hearings that sanctions were not appropriate, and cross motions for directed verdict were denied at the close of the evidence. As MLM had no indication that it could be sanctioned for its conduct, it cannot be held liable for sanctions after trial. *See Empire Fire & Marine Ins. Co. v. Carlson*, 476 N.W.2d 666, 670 (Minn.App.1991) (party who avoids motion for summary judgment may not be subject to sanctions after trial).

## DECISION

The trial court's award of attorney fees is reversed. No award of attorney fees can be made where the insurer did not breach a duty to defend, and no attorney fees can be awarded where the trial court fails to follow *Uselman* guidelines and the trial court fails to specify the incidents of bad faith that led to sanctions.

**Reversed.**

---

**3.** By its terms, *Uselman* procedural guidelines applied only to sanctions brought under Minn. R.Civ.P. 11. Watson points out that no appellate court has applied *Uselman* procedural guidelines to cases involving only Minn.Stat. § 549.21 sanctions. However, several cases have applied the guidelines when mixed rule 11 and Minn.Stat. § 549.21 sanctions are involved.

*See, e.g., Bobey v. City of Minneapolis,* 472 N.W.2d 337 (Minn.1991); *Empire Fire,* 476 N.W.2d at 669. We see no reason not to apply *Uselman* procedural guidelines to cases brought solely under Minn.Stat. § 549.21 where, as here, use of those guidelines would promote the same deterrence value contemplated by *Uselman.*