**AMERICAN STANDARD INSURANCE COMPANY, Appellant,**

v.

**Dang Van LE, Respondent,**

**Truong Huu Do, et al., Defendants,**

**Huong Thi Nguyen, Respondent.**

No. CX–95–1239.

Court of Appeals of Minnesota.

Nov. 21, 1995.

Review Granted Feb. 13, 1996.

Richard Dale, Dale & Purtell, Sioux Falls, SD, for American Standard Ins. Co.

Paul M. Malone, Malone & Mailander, Slayton, for Dang Van Le.

James E. Malters, Von Holtum, Malters & Shepherd, Worthington, for Houng Thi Nguyen.

Considered and decided by PARKER, P.J., and LANSING and FORSBERG,* JJ.

## OPINION

PARKER, Judge.

Respondent Dang Van Le (Le) was sued in a tort action brought after his vehicle struck respondent Huong Thi Nyugen (Nyugen). Le tendered defense of the suit to his insurer, appellant American Standard Insurance Company, and the company appointed an attorney to represent Le in the tort action, subject to a reservation of rights. American Standard then commenced a declaratory judgment action against Le to determine coverage. A jury determined that Le had not intentionally injured Nyugen when he struck her with his vehicle. The district court entered judgment in favor of Le and awarded attorney fees, costs, and disbursements incurred in defending against American Standard's declaratory judgment action. American Standard moved the court for judgment notwithstanding the verdict (JNOV), a new trial, and amended findings. The district court dismissed the motions as untimely but, in the alternative, denied the motions for JNOV and a new trial on the merits and

issued an order amending the findings. American Standard appeals. We affirm.

## FACTS

Respondent Le was covered by a $30,000 liability limit automobile insurance policy issued by appellant American Standard. The liability coverage clause of Le's policy stated:

> We will pay compensatory damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer. We will defend or settle, as we think proper, any suit or claim for damages payable under this policy.

The policy also contained an "Exclusions" clause which provided:

> This coverage does not apply to * * * [b]odily injury or property damage caused or attempted to be caused by an intentional act of, or at the direction of, an insured person.

After the jury concluded that Le had not intentionally injured Nguyen, the court entered judgment in favor of Le and awarded him reasonable attorney fees, costs, and disbursements. Le then submitted a notice of application for taxation of costs and disbursements to the court. American Standard objected to Le's notice of application and brought its post-trial motions, which were denied.

In its supporting memorandum, the trial court found that Le's counsel served American Standard with notice of filing of the application for taxation on March 13, 1995. American Standard filed objections to Le's application on March 23, 1995. On that same date, the court had sent a notice of hearing on the objection and set it for April 4, 1995. American Standard received the notice of hearing and requested that it be reset due to a scheduling conflict. It was reset for April 6, 1995.

On March 27, 1995, however, the court *sua sponte* sent another notice rescheduling the hearing from April 6 to April 18, 1995. On March 28, 1995, American Standard served

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and filed post-trial motions without notice of the motion and without reference to a hearing date. The trial court found that American Standard must have assumed that the post-trial motions would be heard on April 18, 1995, along with the insurer's objection to Le's taxation and disbursements application.

The trial court held that the April 18 hearing date was beyond the 30–day limitations period in which post-trial motions are required to be heard under Minn.R.Civ.P. 59.03. The court also found that American Standard had not moved the court for an extension of the time period, nor had Le waived the 30–day requirement. The trial judge made it clear that he was not aware of American Standard's post-trial motions when the hearing date for the objections to Le's application for taxation and disbursements was rescheduled. The court concluded that it was the moving party's responsibility to inform the court when the notice of filing is served, and dismissed the post-trial motions of American Standard as untimely brought.

## ISSUES

I. Were American Standard's post-trial motions untimely?

II. Did the trial court err in awarding attorney fees to Le based on the jury finding that he did not intentionally harm Nguyen and that American Standard had a duty to indemnify Le for his attorney fees incurred in defending against the declaratory judgment action?

III. Did the trial court err in finding that American Standard refused to defend or indemnify Le in the underlying tort action?

## DISCUSSION

■■■■ A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). "On appeal from a declaratory judgment, this court applies a 'clearly erroneous' standard

of review to the factual findings." *Waste Recovery Coop. v. County of Hennepin,* 475 N.W.2d 892, 894 (Minn.App.1991), *review denied* (Minn. Dec. 9, 1991). "On appeal from a denial of a motion for a new trial, the verdict must stand unless it is manifestly and palpably contrary to the evidence, viewed in the light most favorable to the verdict." *ZumBerge v. Northern States Power Co.,* 481 N.W.2d 103, 110 (Minn.App.1992).

### I.

American Standard argues that the post-trial motions were timely because the original hearing date was set within the 30–day statutory limitations period and the trial court rescheduled the hearing date beyond the 30–day period. See Minn.R.Civ.P. 59.03.[1] American Standard cites *Woodrow v. Tobler,* 269 N.W.2d 910 (Minn.1978), for support.

In *Woodrow,* the Supreme Court upheld the trial court's determination that it had jurisdiction to hear a motion that was properly noticed and submitted to the court, but was rescheduled by the court beyond the 30–day limitations period. *Id.* at 914. However, the court explained that the rescheduling was due to the unavailability of the trial judge, and this constituted "good cause" to extend the 30–day period under Minn.R.Civ.P. 59.03. *Id.* American Standard contends that rescheduling by the court constitutes an automatically valid extension of time, thereby giving the court jurisdiction to hear the motions.

American Standard's argument appears to be in error. This case must be distinguished from *Woodrow* because the trial judge found that (1) American Standard did not submit notices of its post-trial motions with the motions themselves (as required by Minn.R.Civ.P. 7.02, 59.03, and specified by Minn.Gen.R.Pract. 115.02); (2) American Standard did not request an extension of the 30–day period from the court or opposing counsel; (3) the judge was not unavailable during the 30–day time period; and (4) a request could

---

1. Minn.R.Civ.P. 59.03 provides: *"A notice of motion for a new trial* shall be served within 15 days after a general verdict or service of notice by a party of the filing of the decision or order; and the motion shall be heard within 30 days after such general verdict or notice of filing, unless the time for hearing be *extended by the court within the 30 day period for good cause."* (Emphasis added.)

have been made to reset the hearing within the required period.

> Rule 59.03 explicitly mandates a hearing within 30 days after general verdict or notice of filing unless the time for hearing be extended by the court within the 30 day period for good cause shown.

*U.S. Leasing Corp. v. Biba Info. Processing Srvs., Inc.*, 489 N.W.2d 231, 232 (Minn.1992). Prudent counsel would, within the 30–day limitation period, obtain a written confirmation of any extension by the court. *Id.*

■ On review of the record, we conclude that American Standard failed to comply with the provisions of Minn.R.Civ.P. 59.03 in making the post-trial motions to the court. Counsel incorrectly assumed that it was the court's duty to observe the required 30–day limitations period when rescheduling hearing dates *sua sponte*. American Standard had not informed the court that it planned to use the April 18, 1995, hearing date to argue not only the objection to Le's application for taxation and disbursements, but its post-trial motions as well. Therefore, we conclude the trial court did not err in holding that American Standard's post-trial motions were untimely.

### II.

In the interest of judicial economy, however, we review the post-trial motions on the merits, as the district court made alternative orders.

American Standard contends that because they accepted defense of the underlying tort action against Le by hiring counsel to defend him, their motion for JNOV or a new trial should have been granted.

American Standard argues that absent a finding that they breached the insurance contract by failing to defend Le in the underlying tort action, the trial court erred in awarding attorney fees to Le for expenses incurred in defending against their declaratory judgment action. To support this contention, American Standard relies on the reasoning in *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966), *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709 (Minn.1991), and *Spicer, Watson & Carp v. Minnesota Lawyers Mut.*

*Ins. Co.*, 502 N.W.2d 400 (Minn.App.1993). We believe this authority does not dispose of the question.

In *Morrison,* an insured brought a declaratory judgment action against an insurer that failed to defend an underlying action covered by the insurance policy. *Morrison,* 274 Minn. at 134, 142 N.W.2d at 647. In holding that the insured was entitled to recover attorney fees in the declaratory judgment case, the supreme court said:

> [T]his action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as the result of the breach. * * * We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

*Id.; see also* 7C Appleman, *Insurance Law and Practice* § 4691, at 281 (1994).

In *Garrick,* an insured who was struck by an uninsured motorist sued to recover uninsured motorist benefits from three insurance carriers. *Garrick,* 469 N.W.2d at 710. The supreme court there determined that the insured was not entitled to recover attorney fees because under the Morrison exception to the general rule against attorney fees absent a statutory or contractual basis, there was no uninsured motorist insurance contract between the Garricks and the insurers and, thus, there was no legal duty to defend by any of the insurers. *Id.* at 714.

In *Spicer,* an insured attorney brought a declaratory judgment action against his insurer to require it to defend him on a malpractice claim. *Spicer,* 502 N.W.2d at 402. Where the insurer had not forced its insured into litigation, the court held that no award of attorney fees could be made, stressing that the insurer had not breached its duty to defend. *Id.* at 405.

After a review of the case law as applied to the facts of this case, we believe that American Standard's reliance on *Garrick* and *Spicer* is misplaced. In *Garrick* and *Spicer,* the court determined that the insurer had no

contractual duty to defend the insured in the underlying actions. Furthermore, as the declaratory judgement actions were initiated by the insured, the insured was not "forced into litigation" by his insurer and "required to incur litigation expenses" roughly equal to those to be expected in the underlying tort case. *See* Appleman, § 4691 at 283.

We conclude that the court's reasoning in *Morrison* is applicable to this case even in the absence of a breach of contract, because the insurer has forced its insured to defend a declaratory judgment action based on an affirmative defense to applicable coverage of the insured—facially apparent by reference to the negligence complaint and the terms of the policy.

 The mere fact that American Standard did not breach its duty to defend its insured in the underlying tort action does not justify passing to the insured the financial burden of defending the action to determine coverage. In *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 54–55 (Minn. 1979), and *Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 827 (Minn.1989), the Minnesota Supreme Court adopted the *Morrison* rationale to protect insureds from having to pay attorney fees to defend such actions brought against them by their insurers.

In *Lanoue*, the Supreme court found that the insurer has the burden of showing that no duty to defend exists. The court stated:

> Morrison stands for the proposition that, where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insureds will not be required to pay the litigation costs of forcing the insurer to assume that burden.

*Lanoue*, 278 N.W.2d at 55.

In *Economy*, as in the case before us, the insurer retained an attorney to defend its insured in a pending tort action, but concurrently pursued a declaratory judgment alleging that, based on an affirmative defense, Economy had no duty to defend its insured. *Economy*, 445 N.W.2d at 825. In determining that *Economy* owed the insured a duty to defend, the court stated:

> Economy must also pay its insured's legal costs incurred in enforcing the contract

obligation of defense in this declaratory judgment action.

*Id.* at 827 (citing *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966)).

*Economy* has not been overruled. Insurers undertake declaratory judgment actions against their insureds only at their own risk. If an insured is forced into litigation by an insurer and "required to incur litigation expenses," the effect is to nullify the economic value of the defense coverage for which he has paid premiums. *See* Appleman, § 4691 at 281–83.

 We are mindful that "[a]n insurer has a duty to defend 'where any part of the claim is arguably within the scope of the policy coverage.'" *CPT Corp. v. St. Paul Fire & Marine Ins.*, 515 N.W.2d 747, 750 (Minn.App.1994), *review denied* (Minn. July 27, 1994) (quoting *Economy*, 445 N.W.2d at 826 (Minn.1989)); *see also Employers Nat. Ins. Co. v. Breaux*, 516 N.W.2d 188, 190 (Minn.App.1994) (citing *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825–26 (Minn.1980)). The complaint in this case unequivocally states a cause of action in negligence. The policy of insurance between the insurer and insured creates a fiduciary duty in the insurer toward its insured. *See* Appleman, § 4687 at 191. Therefore, when the parties' respective interests conflict, the insurer must subordinate its interest to that of its insured. *See* Appleman, § 4691 at 250. The complaint in *Economy* stated a cause of action in negligence, and the court held that a duty to defend did arise.

 In deciding *Economy*, the Supreme Court laid down a bright-line rule: If any one of the counts of the complaint arguably states a claim covered by the policy, the duty to defend arises and litigation expenses incurred by an insured in successfully defending against the insurer's attempt to escape performance of the duty to defend are chargeable to the insurer. *See Economy*, 445 N.W.2d at 827.

> [T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such ac-

tion, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he never had the contract right * * *.

*Lanoue*, 278 N.W.2d at 55 (footnotes omitted); *see also* Appleman, § 4691 at 283. In other words, if the insurer gambles, it does so with its own money, and if it loses, it must pay the insured's attorney fees necessarily incurred in defending against the insurer's declaratory judgment action.

■ In this case, negligence was alleged against Le and, while American Standard furnished an attorney to represent him in the underlying tort action, it immediately began a declaratory judgment action based on an affirmative defense, claiming that no coverage existed and that it had no duty to defend. The declaratory judgment action resulted in a finding that Le's acts were not intentional. The negligence action was thus viable and covered by the policy.

Although the trial court has determined that American Standard had a duty to defend Le, he is now burdened by attorney fees to cover litigation which brought him only that which was contractually due him by the plain language of the policy. The evidence and the case law support the trial court's finding that it is also American Standard's duty to pay the attorney fees Le has incurred in defending against the declaratory judgment action brought by his insurer. We conclude that the trial court's award of attorney fees to Le was proper.

### III.

American Standard argues that the trial court erred in its March 10, 1995, finding of fact no. 5, wherein the court found:

Plaintiff [American Standard] refused to defend or indemnify Defendant Dang Van Le in the personal injury action contending that coverage was excluded under the intentional act exclusion.

American Standard argues that there is no evidence in the record to support this finding.

Upon review of the record, we observe that in his subsequent order of May 5, 1995, the trial judge recognized the error and amended finding of fact no. 5 as follows:

Defendant Dang Van Le tendered the defense of the personal injury action to Plaintiff American Standard Insurance Company. * * * Plaintiff retained an attorney to represent Defendant Le in the personal injury action subject to the reservation of rights.

There is no need for the issue to be considered by this court other than as that amended finding affected the foregoing discussion on the merits.

### DECISION

American Standard's post-trial motions were not timely, and the trial court's finding of untimeliness was not in error. There was evidence in the record and authority to support the trial court's denial of American Standard's motions for JNOV or a new trial. American Standard had a duty to defend under the policy and, in choosing to challenge that duty, Le was necessarily forced into litigation. We affirm the trial court's dismissal of the post-trial motions for JNOV or a new trial and, in the alternative, affirm the trial court's denial of the post-trial motions for JNOV or a new trial on the merits.

**Affirmed.**