**CONTINENTAL CASUALTY COMPANY, a corporation, Appellee,**

v.

**EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, a corporation, Appellant,**
**and**
**Crane and Ordway Co., a corporation, Appellee.**

No. 72–1528.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1973.

Decided March 20, 1973.

Rehearing Denied May 11, 1973.

3. In his opening statement, the Government prosecutor stated that Encarnacion had been convicted of forgery and had been a drug addict. Transcript of Opening Statements at 6. On direct examination of Encarnacion, the Government brought out that he had been an addict for four years and had stolen in order to pay for his $60.00–$70.00 a day habit. N.T. 2.4–8. Moreover, defense counsel repeatedly referred to testimony at the earlier trial of Angel DeJesus, when it had been developed that Encarnacion had been hospitalized for an overdose sometime in November 1971. *See, e. g.,* N.T. 1.39, 1.54, 2.32–.33, 2.82. Although Encarnacion's testimony in this case about the overdose was at best evasive, *see* N.T. 2.32–.33, under these circumstances we cannot say that the Government intended to conceal information about the overdose or had any reason to believe that defense counsel was unaware of such information.

4. For a discussion of the treatment by the fact-finder of the testimony of an addict-informer, see this court's recent opinion in Government of the Virgin Islands v. Hendricks, 476 F.2d 776, (3d Cir. 1973).

Michael F. Pieplow, Sioux Falls, S. D., for appellant.

Donald J. Porter, Pierre, S. D., for appellee.

Before GIBSON and ROSS, Circuit Judges, and BENSON,* District Judge.

GIBSON, Circuit Judge.

The defendant Employers Commercial Union Insurance Company (Employers), appeals from an adverse declaratory judgment requiring it to defend, as an omnibus insured, the defendant in another law suit, Bruce Lyson v. Crane and Ordway Company,[1] pending in the United States District Court for South Dakota. Plaintiff Continental Casualty Company (Continental), the liability carrier for Crane and Ordway (Crane), brought this declaratory action pursuant to 28 U.S.C. §§ 2201 and 2202. Jurisdiction is based on diversity of citizenship and the laws of South Dakota apply. We reverse and hold that Continental is the primary insurer of Crane and must defend the action brought by Lyson against Crane.

On August 4, 1967, Lyson, an employee of Grimshaw Drilling Company, drove a Grimshaw truck to Crane's business premises in order to pick up pipe that Crane had sold to Grimshaw. While on Crane's premises, Lyson, in loading a 21-foot long and four-inch diameter pipe onto the Grimshaw truck, was injured. He was assisted in the loading of the truck by a fellow employee and one of Crane's employees. Lyson claimed and received workmen's compensation in the sum of $10,405.75 from Employers Group of Insurance Companies, a wholly owned subsidiary of Employers and the workmen's compensation carrier of Grimshaw. Defendant Employers had also issued a liability policy to Grimshaw. Lyson then began an action in the United States District Court for South Dakota against Crane, claiming that his injuries were caused by the negligence of its employee. Crane notified its liability insurance carrier, Continental, of Lyson's suit, and Continental tendered the defense to Employers on the ground that Employers was the primary insurer under its liability policy issued to Grimshaw and should defend the Lyson suit. Employers refused the tender, and Continental brought this declaratory action to determine who is the primary insurer of Crane, and who, therefore, must defend the Lyson suit.

Before discussing the legal interpretation of the conflicting contentions of the insurance companies, we first express our strong disapproval of the litigation procedure employed by Continental and Employers. While these insurance companies are bickering over the legal obligations of liability and duty to defend (issues that too often come before this Court), Lyson remains

---

* Judge Benson, Chief Judge of the District Court of North Dakota, sitting by designation.

1. The District Court decision is published. Continental Cas. Co. v. Employers Com'l Union Ins. Co., 344 F.Supp. 4 (D.S.D. 1972).

uncompensated for any possible negligence by Crane's employee. Lyson was injured on August 4, 1967, and sued Crane during May 1971. The declaratory action was heard on April 11, 1972, and judgment was rendered on June 22, 1972. The Lyson suit has been pending now for nearly two years. We see no reason why Lyson must wait for the determination of this law suit. Instead, Continental and Employers should have decided on one of them to defend the suit and then, after Lyson's claim was litigated, take legal steps to determine which company was liable. There has been no contention that some other party, beside Continental or Employers, is ultimately liable in the Lyson suit. Such unreasonable delay oppressively prejudices the suit of the injured party and unfairly prolongs the payment of possible damages to him.

We now turn to the legal interpretation of the insurance contracts in this diversity case governed by South Dakota law. Attached to Employers' liability policy with Grimshaw was an endorsement that contained the following exclusion:

"LIMITATION OF ADDITIONAL INTERESTS—LOADING AND UNLOADING

"It is agreed that the insurance for Bodily Injury Liability-Automobile . . . does not apply to injury . . . which arises out of the loading or unloading of an automobile, if the accident occurs on premises . . . owned, rented or controlled either by the person or by the employee of the person against whom claim is made or suit is brought for such injury. . . ."

The District Court stated that, if the endorsement was effective, coverage by Employers' policy of Crane would be precluded. The parties do not contest this conclusion. The District Court, however, held that the endorsement was defective and invalid, since it violated S.D.C.L. § 58–11–2 (1967) [2] in failing to name the parties, the subject of the insurance, and the time that the endorsement was to take effect. The questioned endorsement contained blank spaces, which were not completed, for the effective date of the endorsement, the policy number, and the parties to the contract. This endorsement was physically attached to the main policy along with 12 other endorsements that were properly completed and was the third in order of attachments to the policy.

■■■ S.D.C.L. §§ 58–10–2 and 58–11–2 were enacted for the benefit of the insured and in the interest of making insurance agreements more readily understood by the parties purchasing insurance. The main thrust of § 58–11–2 is to the policy itself, as obviously none of the riders or endorsements could contain all six items specified without being an entire insurance policy itself. Thus, for example, the risk insured against, the premiums, and the conditions pertaining to the insurance are not set forth in the riders. The crucial elements of the requirements, as to the riders, are the subject of the insurance or the rider (usually an exclusion of limitation to the main policy) and the number of the insurance policy. The inclusion of the number of the insurance policy on the rider makes certain that the parties intended that the rider be part of the entire policy. In this case, the insurance policy number was omitted on the

---

2. South Dakota Compiled Laws § 58–10–2 defines "Policy" as "the written contract of or written agreement for or effecting insurance, by whatever name called, and includes all clauses, riders, endorsements and papers which are a part thereof." S.D. C.L. § 58–11–2 reads:

"Contents of policy.—Every policy as defined by § 58–10–2 shall specify:

"(1) The names of the parties to the contract;
"(2) The subject of the insurance;
"(3) The risks insured against;
"(4) The time when the insurance takes effect and the duration thereof;
"(5) The premium; and
"(6) The conditions pertaining to the insurance."

rider, however we think under these particular facts that there is no question at all, as between the insurance company and the insured Grimshaw, that all of the 13 riders were attached to the policy at the time of issuance of the entire policy and that the policy with its 13 attached riders embodies the agreement of the parties. All riders were signed by the authorized agent at the time the policy was issued and were delivered as a unit. Thus, absent any detriment to the insured, the clerical error in failing to fill out the third rider in a list of 13 riders attached to the policy is not the type of violation sought to be reached by § 58–11–2.

Although we are faced with the plain wording of § 58–11–2, the view above on the incomplete but valid endorsement is buttressed by both the general common law and another South Dakota statute. ▮ The general common law rule has been stated as follows:

"But at least as regards separate papers physically attached, the modern trend of authority is to the effect that complete absence or insufficiency of reference in the policy proper to the attached paper, or vice versa, whereby there can be no certainty that the parties intended the attached paper to become a part of the whole contract of insurance, precludes its inclusion or construction in connection therewith." Annot., 128 A.L.R. 1034, 1042 (1940). Also, 43 Am.Jur.2d, Insurance § 283 (1969); 13 J. Appleman, Insurance Law & Practice § 7540 at 302 (1946).

At common law whether or not an incomplete endorsement is part of the policy presents a factual question that turns on the intention of the parties. The existence of certain facts leads to inferences that can be reasonably made to determine whether a rider was intended by the parties to be a part of the entire policy. For example, the extreme case for non-inclusion of a rider would

be complete absence of reference to the policy in an unsigned rider and the issuance of this lone rider after issuance of the entire policy. However, in this case, the rider was signed, attached to the policy at the time of issuance of the entire policy, and was only one of 13 riders that was not properly completed. Such facts lead to the reasonable inference that the rider was intended by the parties to be part of the entire policy. Petrowski v. Hawkeye Security Ins. Co., 237 F.2d 609, 610 (7th Cir. 1956), cert. denied, 352 U.S. 972, 77 S.Ct. 364, 1 L. Ed.2d 325 (1957).

In addition, another South Dakota statute leads to the same conclusion. S. D.C.L. § 58–11–38 (1967) reads:

"58–11–38 . . . Any insurance policy, rider, or endorsement issued after June 30, 1966 and otherwise valid which contains any condition, omission or provision not in compliance with the requirements of this title, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this title." [3]

The failure in this case to fill in the blank spaces on the questioned endorsement was a clerical error, which is an omission under § 58–11–38 that does not make the endorsement invalid.

An added factor in this analysis is that the requirements of § 58–11–2 are for the purpose of protecting the insured from any improper inclusion of policy provisions contained in endorsements of which he has no knowledge. Here, the insured (Grimshaw) is not contesting the validity of the endorsement, but rather another insurance company (Continental) who was not a party to the insurance contract. Further, Continental is attempting to shift its primary liability, for which it received

---

3. It is our duty to apply South Dakota law in interpreting these insurance contracts. McMichael v. American Insurance Co., 351 F.2d 665, 669 (8th Cir. 1965).

Neither South Dakota courts nor federal courts interpreting South Dakota law have had the occasion to interpret this statute.

premiums, to Grimshaw, who has no connection with the alleged tort feasor, and to make Grimshaw through Employers liable for the damage inflicted. Apropos are the words of Chief Judge Brown in American Fidelity & Cas. Co., Inc. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 280 F.2d 453, 455 (5th Cir. 1960):

> "This is another and undoubtedly not the last, of those cases of which we have many, in which one insurer having the good fortune to find some other insurer who has written a policy for someone else attempts to engraft itself upon the contract to which it was not a party in the hopes that what it bound itself to do, it need not perform. The result, if successful, is that its contractee, the assured, must look elsewhere for the promised protection."

In considering questions of primary coverage and potential overlapping coverage clauses, we think an incongruous result can be avoided by giving heed to the intention of the parties to the insurance contract and the coverage they intended to purchase. Judge Tate's concurring opinion in State Farm Mutual Automobile Ins. Co. v. Travelers Ins. Co., 184 So.2d 750, 754 (La.App.1966),[4] appropriately reads:

> ". . . the respective policy coverages can be sensibly allocated in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy."

These principles can be applied for each insurance policy involved in this case. The workmen's compensation policy issued by Employers Group to Grimshaw was obviously issued to compensate employees of Grimshaw. Employers Group has properly fulfilled its insuring obligation by paying Lyson over $10,000 for the injuries suffered. Employers' liability policy covered losses to nonemployees of Grimshaw occurring due to the negligence of Grimshaw or its employees. In addition, that policy generally did not insure against the risk of injuries occurring during the loading or unloading of the insured's vehicle on the premises of another employer. Continental's liability policy issued to Crane was intended to compensate for losses occurring to non-employees due to the negligence of Crane or its employees.

With these policies in force, we think that the sensible allocation of policy coverage and the intentions of all parties demand that Continental's liability policy should cover Lyson's alleged claim. To interpret these policies so as to require Grimshaw's carrier to be liable for the negligence of a Crane employee defies common sense knowledge that one company would not pay for insurance to protect against the negligence of another company's employee on the other company's premises. Such an absurd result conflicts with the intention of businesses to insure against the risk of their own negligence and further increases the accelerating cost of insurance.

Therefore, the exclusion in Employers' liability policy is valid and precludes coverage for liability due to the loading of the truck on Crane's premises. Continental, as the primary insurer and liability carrier of Crane, must defend Lyson's suit and be liable for any judgment within policy limits.[5]

Judgment reversed.

---

4. Cited with approval in Federal Insurance Company v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967) and State Farm Mutual Automobile Insurance Company v. American Casualty Company, 433 F.2d 1007, 1012 (8th Cir. 1970) (Gibson, J., dissenting).

5. Due to our decision on the validity of the "loading and unloading" exclusion, it is unnecessary for us to discuss the District Court's holding and parties' contentions concerning another exclusion and a "severability of interests" clause. We express no opinion on those issues.