AMERICAN STANDARD INSURANCE
COMPANY, Appellant,

v.

Dang Van LE, Respondent,

Truong Huu Do, et al., Defendants,

Huong Thi Nguyen, Respondent.

No. CX–95–1239.

Supreme Court of Minnesota.

Aug. 8, 1996.

Richard Dale, Dale & Purtell, Sioux Falls, SD, for appellant.

Paul Malone, Malone & Mailander, Slayton, James E. Malters, Von Holtum Maltus Shepherd, Worthington, for respondents.

Carol Lynn O'Gara, Sieben, Grose, Von Holtum, Minneapolis, for amicus curiae.

## OPINION

COYNE, Justice.

Plaintiff American Standard Insurance Company issued its auto policy to defendant Le. Defendants Le, Do, and Do's wife Tran all worked at Monfort Packing Plant in Worthington. As Le and his girlfriend Diep left the plant on November 30, 1993, Do cursed at Le and made an obscene gesture. The two men argued, and Tran began an argument with Diep. Do's tenant and rider, Ms. Nguyen, broke up the altercation, but as the five left the parking lot, Do said he would meet Le later to finish the fight.

Do, Tran and Nguyen left in Do's pickup truck. Le and Diep followed in Le's van. Whenever Le attempted to pass, Do swerved in front of him until Do stopped on the highway, forcing Le to stop behind him. Tran and Nguyen pulled Le out of the van and the two men fought until Le sustained a deep stab wound in his right hand. Le leaped back into his van and drove right into Do's pickup. Nguyen, who was standing between the two vehicles, was crushed between them. The impact was sufficient to drive Do's truck forward about 20 feet. Le then backed up, swerved to the right of the pickup, running over Nguyen before he once again hit Do's truck.

A police officer testified that Le had told him at the scene of the collision that he had intentionally struck the pickup and that he had seen Nguyen in front of his van. The officer also stated that the acceleration marks left at the scene "do not show up until the van actually makes contact with the back of the pickup truck and the acceleration marks are still continuing after contact is made." A witness said Nguyen spoke to Le and Le said he told her to move or he might hit her. Le told another officer that he had intended to run into the truck the second time. As a result of these collisions the box of the truck was shoved into the cab.

About a month after the incident, Nguyen told a police investigator that Le told her after he reentered the van that he wanted "to hit [her] with his van." Le ultimately pled guilty to criminal vehicular operation resulting in great bodily harm.

Huong Thi Nguyen brought an action against Dang Van Le and Truong Huu Do to recover damages for her injuries. American Standard assumed Le's defense in that action pursuant to a reservation of its right to assert that Nguyen's claim was not within the residual liability coverage afforded by its policy. Subsequently, American Standard commenced a declaratory judgment action to resolve the coverage question.

Of course, at the trial of the declaratory action, Le testified that he had not intended to strike Do's truck and that he had not seen Nguyen standing in front of his van. The jury found that Le had not intentionally injured Nguyen when he struck her with his van. On March 10, 1995, the court issued findings of fact, conclusions of law, and order for judgment. Included in the court's findings of fact were the findings that American Standard had "refused to defend or indemnify Defendant Dang Van Le in the personal injury action" and that Le did not intentionally injure Huong Thi Nguyen when he struck her with his van. On the basis of those facts, the court concluded that American Standard owed Le the duties to defend and indemnify him pursuant to its insurance policy for the claims asserted in Nguyen's action and also that Le was entitled to recover reasonable attorney fees incurred in defense of the declaratory judgment action.

Le served notice of making and filing of the order on American Standard by mail on March 13, 1995,[1] together with his application for costs and disbursements. On March 23rd American Standard objected to Le's taxation of costs and disbursements, and a hearing was set for April 4th but was changed to April 6, 1995 because of counsel's conflicting schedule.

On March 27, 1995, American Standard served and filed motions for amended findings, judgment notwithstanding the verdict or, in the alternative, a new trial. The motions were unaccompanied by a notice of motion, but it appears that the parties anticipated that the post-trial motions were to be heard with the objections to costs and disbursements. On the same day, March 27, the district court administrator issued a notice of hearing informing counsel that the court had rescheduled the matter previously set for hearing on April 6, 1995 to April 18, 1995 at 11:00 a.m. Counsel for both American Standard and Le were present at the appointed time prepared to argue the post-trial motions as well as the objection to costs and disbursements.

At the hearing counsel for Le and for Nguyen both attacked the post-trial motions on the ground the hearing was untimely. On

1. Although notice of the making and filing of the March 10, 1995 order was served, neither the notice nor affidavit of service was filed with the court administrator.

May 3, 1995 the court issued its order dismissing American Standard's post-trial motions as untimely heard. In the alternative, the motions were denied except for amendment of the findings of fact to acknowledge that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le in that action. Despite the dismissal of the motion to amend the findings and conclusions, the court went on to deny the motion, relying on *Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 827 (Minn. 1989), for its decision that American Standard was obliged to pay the cost of Le's defense of the declaratory action. On appeal the court of appeals affirmed.

■ Our review here is limited to the question of the propriety of the award of attorney fees in this declaratory action, but prefatory to addressing that issue we must decide whether American Standard's post-trial motions were properly dismissed as untimely.

Rule 59.03, Minn.R.Civ.P., provides that a motion for a new trial must be served within 15 days after service of notice by a party of the filing of the decision or order. It is undisputed that the post-trial motions were served timely. Rule 59.03 also provides, however, that the motion is to be heard within 30 days after such notice of filing, unless the time for hearing is extended by the court within the 30–day period for good cause shown. Inasmuch as the notice of filing was served by mail on March 13, 1995, Monday, April 17, 1995 was the last day on which the motions could be heard absent an extension granted by the court for good cause on or before April 17.

None of the parties requested an extension of the time for hearing, and, according to the trial judge, he did not extend the time. Apparently the hearing was rescheduled by the court administrator without consulting either the judge or any of the parties although the court administrator's notice represented to the parties that the matter had been "rescheduled by the court." [2]

The disposition of the problems resulting from the series of post-trial technical defects clearly demonstrates the necessity for counsel—and the court administrator as well—to acquaint themselves with the Rules of Civil Procedure and the General Rules of Practice and to conduct themselves accordingly.

At the hearing on April 18, counsel for Le and Nguyen questioned the court's jurisdiction to hear the post-trial motions, complaining that the hearing was untimely.[3] Apparently, those counsel then proffered the notice of making and filing of the order with proof of service by mail because the court noted that it had not been filed with the court administrator's office. Citing *Woodrow v. Tobler*, 269 N.W.2d 910 (Minn.1978), American Standard argued that the hearing was timely because it had been reset to April 18 by the court. Distinguishing *Woodrow* on the ground that there the judge's unavailability constituted good cause, the judge dismissed the post-trial motions as untimely because he had been available within the 30–day period for hearing, and there was, therefore, no good cause for an extension of which the judge was not even aware.

In the particular circumstances of this case, it seems to us unreasonable to penalize one party for the benefit of another who is also at fault. The setting of the hearing date resulted not merely from the failure of American Standard's counsel to include a notice of motion with his post-trial motion papers but depended as well on the failure of Le's or Nguyen's counsel to file the notice of making and filing order with proof of service.[4] Moreover, although there surely was no judicial determination of good cause, nei-

---

**2.** We trust it is not necessary to remind any court administrator that he or she is not the court but only the court's clerk.

**3.** We are constrained to comment that "trial by ambush" fell out of favor more than 50 years ago and that not so long ago professional courtesy prompted a lawyer to notify opposing counsel of an intention to attack a proceeding on technical grounds—a custom respectful not only of opposing counsel but also of the financial resources of one's own client.

**4.** Filing the notice and proof of service would have served to advise the court and the administrator's office that the 30–day period for hearing had started to run.

926

ther was the setting of the hearing date the product of counsel's unilateral action. *United States Leasing Corp. v. Biba Information Processing Servs., Inc.,* 489 N.W.2d 231, 232 (Minn.1992). Rather the hearing was rescheduled beyond the 30–day limitation by the court administrator's unilateral action, and counsel were notified in writing that the hearing had been "rescheduled by the court." Undoubtedly, the defect in the proceeding would have come to light had counsel queried the court about the reason for the resetting, but Rule 59.03 does not prescribe the form an extension is to take and it seems to us that counsel for American Standard was justified in assuming that the court had good cause to reschedule the hearing. As a practical matter, a lawyer ought not to be required to initiate an inquiry that might be considered disrespectful of the judge. Therefore, we are of the opinion that American Standard's post-trial motions were improperly dismissed.

■ Apparently concerned over the propriety of the dismissal, the district court ruled, in the alternative, that the post-trial motions should be denied, except for the amendment of the findings of fact to reflect American Standard's assumption of Le's defense in the main action pursuant to a reservation of rights. Unfortunately, the district court refused to amend the conclusion of law awarding Le attorney fees in the defense of the declaratory action, and the court of appeals affirmed.

The seminal case in the recurring skirmishes over liability for attorney fees in declaratory actions to determine questions with respect to insurance coverage is *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966). In *Morrison,* after Arrow Insurance Company had denied that its policy was in force at the time of the accident and had wrongfully refused to defend its insured, the insured brought a declaratory action against the insurer to determine whether the insurer was bound by the representations of its apparent agent with respect to the reinstatement of an insurance policy. After ruling that the insurer was bound by the representation that the policy had been reinstated, the court addressed the question whether the

insured should recover his legal fees incurred in the declaratory judgment action. First the court set out the general rule:

[L]egal fees are ordinarily not recoverable unless there is statutory authority for it.

However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as a result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

*Id.* at 137–38, 142 N.W.2d at 647 (citations omitted).

That the limited exception to the general rule which was carved out in *Morrison* "is in fact limited to damages resulting from breach of contract by the insurer's failure to defend" was made quite clear in *Abbey v. Farmers Ins. Exch.,* 281 Minn. 113, 119, 160 N.W.2d 709, 712 (1968). And with a single exception, this court has consistently resisted efforts to expand the *Morrison* holding to allow collection of attorney fees in actions which do not involve the insurer's breach of contract by failure to assume the duty to defend. *E.g., SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 319 (Minn.1995); *Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49, 54 (Minn.1979); *Rent–A–Scooter, Inc. v. Universal Underwriters Ins. Co.,* 285 Minn. 264, 268, 173 N.W.2d 9, 11 (1969).

The sole exception is *Economy Fire & Cas. Co. v. Iverson,* 445 N.W.2d 824 (Minn. 1989), which had assumed a very curious posture by the time it reached this court. Iverson, the insured, shot a person who had threatened to kill him. The victim commenced a tort action against Iverson and Iverson tendered defense of the action to his insurer under the terms of his homeowner's policy. The complaint alleged one count of negligence which, if proven, would fall within the scope of Iverson's policy coverage, so there was no question that the insurer had a duty to defend. *Id.* at 825. The insurer defended the tort action in which the jury ultimately found that Iverson had intention-

ally caused bodily injury to the victim but that he was acting in self-defense. The insurer initiated a declaratory judgment action alleging that it had no obligation to defend or indemnify Iverson and asking to be released from any duty to defend. *Id.*

This court treated the declaratory action as one in which the insurer sought to be excused from any obligation to defend. Having decided that the insurer was obliged to defend up to the time the tort action was settled, the court saw no reason to reach the coverage issue. Without any articulation of a reason for departing from the rule established in *Morrison* and, indeed, indicating that it was following *Morrison,* the court held that the insurer was required to pay the insured's attorney fees incurred in the declaratory judgment action. *Id.* at 826–27.

The almost cavalier disposition of the attorney fee issue in the majority opinion is, perhaps, explained in the dissent of Justice Simonett, in which two other justices joined. The dissenters were of the opinion that the court should reach the coverage issue. The dissenters would have held that if an insured in self-defense intentionally injures the person threatening his life or property and does so expecting or intending to cause bodily injury to that person, the intentional act exclusion applies to bar insurance coverage for the injury. *Id.* at 828–29 (Simonett, J., dissenting in part).

With respect to the attorney fee issue, however, the dissenters agreed that the insured should recover his attorney fees under the particular circumstances of *Economy Fire.* The declaratory judgment action in the *Economy Fire* case was brought to decide coverage, but that question necessarily and effectively resolved the issues of underlying tort liability. In those circumstances, the insurer should pay the insured's legal fees "because it would have paid [those same] attorney fees if the tort action which involved the same dispositive fact issue had been tried first; it should pay because it is satisfying its duty to defend on the negligence count in the tort action by litigating that count in the declaratory judgment action." *Id.* at 830–31 (Simonett, J., dissenting in part).

Subsequent to the *Economy Fire* decision, this court has twice refused to extend the exception for fees incurred as a direct loss incident to the breach of a contractual duty to defend beyond the facts which prompted recognition of the *Morrison v. Swenson* exception. As the court commented in *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 714 (Minn.1991), "For over 100 years, the law in Minnesota has been that, absent a contractual agreement or statute, a party cannot collect attorney fees." Ruling that Minn.Stat. § 555.08 (1990) could not be extended to provide for attorney fees absent a breach of the contractual duty to defend, we reversed the court of appeals' award of attorney fees. Most recently, in *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 319 (Minn.1995), this court once again stated that:

> Attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such recovery. *Morrison v. Swenson,* 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966). In this case, recovery is premised on Allied's breach of its contractual duty to defend.

Once again we reiterate that attorney fees are recoverable in a declaratory judgment action *only* if there is a breach of a contractual duty or statutory authority exists to support such an award. Neither *Economy Fire & Cas. Co. v. Iverson,* 445 N.W.2d 824 (Minn.1989), nor *Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49 (Minn.1979), stand for the proposition that the insured is entitled to recover from the insurer the financial burden of defending an action to determine the existence of coverage. The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect—usually by wrongfully refusing to defend the insured. To the extent that prior cases, such as *Economy Fire & Cas. Co. v. Iverson,* 445 N.W.2d 824 (Minn.1989), or *Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49 (Minn.1979), are or can be interpreted as inconsistent with the foregoing rule adopted in *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966), as a limited exception to

the general rule that legal fees are not recoverable absent statutory authority therefor, they are hereby overruled.

Here the trial court found as fact that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le, its insured, in that action but incorrectly concluded that American Standard was obliged to pay Le's attorney fees incurred in defense of the declaratory action. We reverse the decision of the court of appeals affirming the award of attorney fees and direct the entry of judgment denying Le an award of attorney fees.

Reversed.