# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4367

_____

| | | |
|---|---|---|
| Chicago Title Insurance Company, | * | |
| a Missouri Corporation, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Federal Deposit Insurance Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 16, 1998

Filed: April 5, 1999

_____

Before BEAM, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Chicago Title Insurance Company (Chicago Title) appeals the grant of attorneys' fees and costs in favor of the Federal Deposit Insurance Corporation (the FDIC).  The district court[1] granted the FDIC's motion for attorneys' fees and costs because Chicago Title breached its contractual duty to defend its insured—the FDIC.  Chicago Title argues that there was no breach.  We affirm and remand.

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

## I.   BACKGROUND

In 1987, Murray Savings Association (Murray), provided a loan for the construction of an apartment building.  As security for the loan, Murray took a mortgage on the apartment building and property.  Murray also obtained a title insurance policy, issued by Chicago Title, that insured, among other things, the priority of the mortgage.  The title insurance policy required that Chicago Title provide a defense, "at its own cost and without undue delay," for any claims covered by the policy.  Construction of the apartment building began, but the builder eventually experienced financial difficulties and abandoned the unfinished project.  Murray also fell upon hard times and was declared insolvent.  Murray was placed in receivership, and a real estate development company was retained to complete the project.  The mortgage, along with the title insurance policy, was assigned to the FDIC as receiver.[2]

Beginning in 1989, a series of legal proceedings were commenced to foreclose mechanics' liens filed against the apartment property for work done on the project (hereinafter the lien actions).  The lien actions asserted that the mechanics' liens had priority over the mortgage.  On the belief that the title insurance policy covered mechanics' liens and thereby required Chicago Title to defend against the lien actions, the FDIC tendered the defense to Chicago Title.  A defense was requested for the first time in May 1989, but was promptly refused by Chicago Title.  The FDIC retained independent counsel to defend against the lien actions but persisted in seeking a defense from Chicago Title.  Chicago Title finally accepted the tender of defense for all the lien actions in April 1991, subject to a reservation of rights.  Chicago Title agreed to defend the FDIC but reserved the right to dispute whether the insurance

_____

[2]Originally, the mortgage was transferred to the Murray Federal Savings & Loan Association with the Resolution Trust Corporation acting as receiver.  The FDIC is now acting as receiver and holds the mortgage and title insurance policy.  For simplicity, the actions of the receiver will simply be referred to as those by the FDIC, although in some instances, the actions were taken by the Resolution Trust Corporation.

policy provided coverage for the mechanics' liens. The reservation of rights on coverage created a conflict of interest for Chicago Title in providing the defense, thus it agreed that the FDIC would defend against the lien actions, and Chicago Title would reimburse FDIC for the attorneys' fees and costs incurred.

The FDIC paid their counsel for defense fees and costs, and sought reimbursement for the first time in August 1991. Chicago Title informed the FDIC that the requested fees and costs were unreasonably high and refused to pay any amount. Settlement negotiations between the parties to the lien actions were then underway. Because insurance coverage was uncertain, Chicago Title also participated with the FDIC in the settlement negotiations. In September 1991, a settlement was reached with the FDIC and Chicago Title each contributing one-half of the $498,000 agreed upon amount. After the settlement, the FDIC submitted its final attorneys' fees and costs, amounting to $280,584.06, to Chicago Title. Chicago Title deemed the requested sum to be unreasonably high and again refused to pay any amount.

Chicago Title brought this declaratory judgment action to recover the amount it had contributed to the settlement ($249,000) from the FDIC. Chicago Title alleged that the title insurance policy did not cover the mechanics' liens that were the subject of the lien actions. The FDIC counterclaimed for the amount it had contributed towards the settlement and the fees and costs it incurred in defending against the lien actions. On appeal from the results of a jury trial, we concluded that the title insurance policy covered the mechanics' liens. See Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 903 & 908 (8th Cir. 1995). Consistent with the title insurance policy, we affirmed the jury's express finding that Chicago Title owed a contractual duty to defend the FDIC in the lien actions. We then remanded to the district court. The district court referred the matter to a special master, for a determination of reasonable attorneys' fees and costs required to defend the FDIC. The district court reduced the FDIC's requested fees and costs from $280,584.06 to an amount it considered reasonable—$197,559.54.

Ordinarily, when the coverage issue is concluded, that is the end of the matter. However, the FDIC filed a motion to recover the $434,384.24 in fees and costs it had

expended in this declaratory judgment action. The FDIC argued that because Chicago Title had not reimbursed the FDIC for defense fees and costs until forced to do so by the district court, that this refusal to pay was a breach of the duty to defend which, in turn, authorized an award of attorneys' fees and costs in this litigation. The district court concluded that, because Chicago Title had breached its duty to defend the FDIC in the lien actions, Chicago Title should be liable for the fees and costs required to enforce that duty. However, the district court reduced the requested amount by 30% and awarded $304,068.97. Chicago Title appeals.

## II.    DISCUSSION

Chicago Title argues on appeal that it did not breach a duty to defend the FDIC in the lien actions because it accepted the tender of defense and only refused to reimburse the FDIC for excessive and unreasonable charges. In contrast, the FDIC argues that the refusal to pay attorneys' fees and costs was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs in this declaratory judgment action. Applying Minnesota law, which the parties agree controls, see Chicago Title, 53 F.3d at 904, we review questions of fact under the "clearly erroneous" standard and conclusions of law de novo.[3] Fed. R. Civ. P. 52(a) (review of factual findings); see Hawkins Chem., Inc. v. Westchester Fire Ins. Co., 159 F.3d 348, 352 (8th Cir. 1998) (de novo review for legal questions).

The general rule is that attorneys' fees and costs are awarded only when authorized by statute or provided for in the contract. See Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 173 N.W.2d 9, 12 (Minn. 1969). While the title

---

[3]Chicago Title would have us review de novo the legal question of whether a failure to pay an unreasonable amount of attorneys' fees constitutes a breach of the duty to defend. We do not reach this issue, as the subsequent analysis will demonstrate, because Chicago Title failed to pay what it considered to be a reasonable sum.

-4-

insurance policy required Chicago Title to pay attorneys' fees and costs in the lien actions, it did not authorize fees and costs for this declaratory judgment action. However, a limited exception to the general rule was developed in <u>Morrison v. Swenson</u>, 142 N.W.2d 640, 647 (Minn. 1966). The exception provides that attorneys' fees and costs can be awarded when an "insurer has breached the insurance contract in some respect." <u>American Standard Ins. Co. v. Le</u>, 551 N.W.2d 923, 927 (Minn. 1996). One such breach of the insurance contract is a breach of the duty to defend. <u>See</u> <u>Domtar, Inc. v. Niagara Fire Ins. Co.</u>, 563 N.W.2d 724, 737-38 (Minn. 1997).

There is no question that Chicago Title had a duty to defend the FDIC against the lien actions. "'That is, the insured has a contract right to have actions against him defended by the insurer, at its expense.'" <u>Security Mut. Cas. Co. v. Luthi</u>, 226 N.W.2d 878, 884 (Minn. 1975) (quoting 7C John Alan Appleman, <u>Insurance Law and Practice</u> § 4691, at 283 (Walter F. Berdal rev. 1979)). The title insurance policy provides, as indicated, that for covered claims, Chicago Title "at its own cost and without undue delay, shall provide for the defense of an insured." Appellee's Appendix at 41. And, as noted, the jury expressly found, and we affirmed, a duty to defend. The only question remaining is whether Chicago Title breached that duty.

A breach of the contractual duty to defend usually occurs by "wrongfully refusing to defend the insured." <u>Le</u>, 551 N.W.2d at 927. This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. <u>See</u> <u>id.</u> Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys' fees and costs in the declaratory judgment

action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation. See id.

Chicago Title refused the tender of defense in the lien actions for nearly two years, then grudgingly accepted the tender with an extensive reservation of rights that continued to deny that Chicago Title had a duty to defend or that the title insurance policy covered the mechanics' liens.[4]  When a conflict of interest such as this arises—accepting the tender of defense while denying coverage—the duty to defend transforms into a "duty to reimburse [the FDIC] for reasonable attorneys' fees incurred in defending the lawsuit." Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn. 1979). Therefore, Chicago Title authorized reimbursement for "all action [deemed] necessary to defend such claims." Appellee's Appendix at 71. This would have fulfilled Chicago Title's duty to defend, but Chicago Title then refused to pay any amount of the invoices for attorneys' fees and costs because it considered the requested amount unreasonable.

Chicago Title argues that the law, as stated in Prahm, only imposes a duty to reimburse for "*reasonable*" attorneys' fees. Prahm, 277 N.W.2d at 391 (emphasis added). That is true. However, the district court found that at least $80,000 to $120,000 of the invoices were not disputed by Chicago Title as unreasonable, and Chicago Title did not pay or, apparently, even offer to pay a portion of them. In Minnesota, the duty to defend is read broadly. See Brown v. State Auto. & Cas. Underwriters, 293 N.W.2d 822, 825 (Minn. 1980). For example, it requires insurers

---

[4]The reservation of rights document reserved "the right to seek reimbursement for defense costs advanced" to the FDIC in the event that the mechanics' liens were not covered by the title insurance policy. Appellant's appendix at 33 (letter explaining Chicago Title's acceptance of the tender of defense and reservation of rights). A right of reimbursement would not have arisen since the jury found that Chicago Title had a duty to defend. See Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1171-72 (D. Minn. 1996).

to defend an entire action and not just "to the extent of [the insurer's] own interests in the litigation." Mannheimer Bros. v. Kansas Cas. & Sur. Co., 184 N.W. 189, 190 (Minn. 1921). Furthermore, payment of the undisputed amount is consistent with the Minnesota policy of "encouraging insurance companies to properly meet their duty to defend [the] insured against third party claims and minimize unnecessary claims to enforce policy coverage." Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1172 (D. Minn. 1996).

Our opinion in Continental Casualty Co. v. Employers Commercial Union Insurance Co., 476 F.2d 782 (8th Cir. 1973), provides a useful analogy in this case. In Continental, two insurance companies were disputing which one was obligated to the insured and therefore had a duty to defend. The Continental court stated that one of the insurance companies should have defended the suit and then subsequently taken up legal action to determine which company had the obligations. See id. at 784.

Chicago Title had a duty to defend the FDIC by providing the defense or reimbursing the defense fees and costs. Despite Chicago Title's nominal acceptance of the duty, the FDIC was in fact required to defend itself in the lien actions. Chicago Title was then forced by litigation to reimburse the defense costs. This is a breach of the duty to defend. See Brown, 293 N.W.2d at 826. When a breach of the duty to defend occurs, the insured "is entitled to be reimbursed for attorneys fees and costs expended" to force the insurer to pay for the defense. Independent Sch. Dist. No. 697 v. St. Paul Fire and Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994). Pursuant to the finding of breach, the FDIC requested $434,384.24 in attorneys' fees and costs for litigating this declaratory judgment action. The district court reduced that amount by 30% to $304,068.97. We affirm the district court's discretionary reduction. See Domtar, 563 N.W.2d at 740-41. We also think it is appropriate to further reduce the award by $23,100, equaling 70% of the time expended to establish the reasonableness of the lien action fees before the special master. Appellee's Appendix at 59. This

amount should not be recoverable since the sole purpose of the hearing was to establish the reasonableness of the fees, which fees were found to have been unreasonably high.

Chicago Title's argument that it is relieved from its breach because the FDIC claimed an unreasonable amount of attorneys' fees and costs—relying on the implied covenant of good faith and fair dealing—is of no avail. It does not, in any event, vitiate the duty to pay at least what Chicago Title itself considered an unquestionably reasonable amount. Cf. Gopher, 588 N.W.2d at 770 (concluding that "an insurer's ability to dispute the reasonableness of attorney fees is diminished when it has improperly declined a tender of defense").

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of attorneys' fees and costs resulting from Chicago Title's breach of its duty to defend. We remand to the district court to award $280,968.97 in fees and costs.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.