**SPHERE DRAKE INSURANCE PLC, UnionAmerica Insurance Company, Ltd., Copenhagen Reinsurance Company, St. Paul Reinsurance Company, and Terra Nova Insurance Company, Ltd., Plaintiffs,**

v.

**Robert TRISKO, d/b/a Trisko Designer Jewelry and Trisko Jewelry Sculptures, Ltd., Defendants.**

**No. Civ. 97–334(RLE).**

United States District Court, D. Minnesota.

Sept. 8, 1999.

James Thomas Martin, Dan Thomas Tyerson, Gislason Martin & Varpness, Edina, MN, for plaintiffs.

Kevin Starr Carpenter, Holmen & Carpenter, St. Cloud, MN, for defendants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

In accordance with the consent of the parties, this matter was tried before the Court, and is presently before us on the

Plaintiffs' Objection to the Defendants' Taxation of Costs. For these purposes, the Plaintiffs have appeared by James T. Martin, Esq., and the Defendants have appeared by Kevin S. Carpenter, Esq. We grant costs in the amount of $3,191.27.

## II. *Discussion*

By Order dated July 30, 1999 [Docket No. 58], we directed the parties to "meet and confer" in an effort to amicably resolve the taxation of costs issue. While the parties were able to reduce the amount of costs, which remain in dispute, a complete accord escaped them. On August 18, 1999, the Defendants filed of Bill of Costs in the total amount of $8,701.27. See, *Docket No. 59*. In response, on August 19, 1999, the Plaintiffs filed their Objections to certain costs that the Defendants seek to tax. The Plaintiffs do not oppose a taxation of the Defendants' Fees of the Clerk; Fees of Court Reporters; Docket Fees; and Video Playback Expenses—costs that total $2,189.19. See, *Title 28 U.S.C. § 1920(1)–(6)*. We direct that these costs be taxed to the Plaintiffs, and our analysis turns to the expenses that remain in dispute.

■ The Defendants seek to tax the following witness fees:

| | Attendance | Subsist. | Mileage | Total |
|---|---|---|---|---|
| Walter Yarbrough | $1,000.00 | | $ 86.80 | $1,086.80 |
| John Dorsey | $2,000.00 | $91.58 | $ 105.40 | $2,196.98 |
| Dale Walz | $ 210.00 | | $ 86.80 | $ 296.80 |
| Mike Crowley [1] | $ 500.00 | $88.00 | $1,000.00 | $1,588.00 |
| TOTAL | | | | $5,168.58 |

The plaintiffs do not quarrel with the Defendants' entitlement to some reimbursement of witness fees, and they agree to the "Mileage" expenses being requested for Yarbrough, Dorsey, and Walz, but they take exception to the requests for the items of "Subsistence," for the travel expenses of defense counsel, which were related to the taking of Crowley's deposition, and they seek a reduction of the "Attendance" fees to $300.00 per witness, with the exception of Walz, who testified as a fact witness. We conclude that the Defendants are not entitled to more than the statutory attendance fee for those lay, and expert witnesses, who testified on their behalf at their Trial.

■ "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Section 1821(a) and (b) allows the prevailing litigant, in a Federal Court case, to recover forty dollars per day, per witness.[2] The

---

1. The testimony of Michael Crowley ("Crowley") was taken by deposition, in Dade County, Florida, and replayed in lieu of the witness' appearance at Trial. The "Subsistence" and "Mileage" figures were incurred by counsel for the Defendant, who traveled to Dade County on August 14, 1997, in order to meet with Crowley concerning the status of Crowley's investigation into the loss sustained by the Defendants, and who returned to Dade County, in March of 1999, in order to prepare Crowley for his deposition.

2. Title 28 U.S.C. §§ 1821(a)(1) and (b) provide as follows:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of court of the United States shall be paid the fees and allowances provided by this section.

\* \* \* \* \* \*

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

same forty dollar limitation applies to·expert witnesses. *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry.*, 284 U.S. 444, 446–47, 52 S.Ct. 223, 76 L.Ed. 386 (1932). Indeed, in *Henkel,* the Court rejected an argument that Minnesota's discretionary rule, which allows an award of expert witness fees to the prevailing party, should trump the predecessor to Section 1821, reasoning as follows:

The appellant, seeking the application of the statutes of Minnesota, invokes the rule that "the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decisions in trials at common law, in courts of the United States, in cases where they apply." \*\*\* But this provision, by its terms, is inapplicable, as the Congress has definitely prescribed its own requirement with respect to the fees of witnesses. The Congress has dealt with the subject comprehensively, and has made no exception of the fees of expert witnesses. Its legislation must be deemed controlling, and excludes the application in the federal courts of any different state practice.

Admittedly, *Henkel* involved a claim under the Federal Employee's Liability Act, thereby invoking the Federal Question jurisdiction of the Federal Courts, while the Plaintiffs' claim invoked this Court's diversity jurisdiction.

 Notably, the Defendants draw no express statutory, or contractual authorization for the award of witness fees, in excess of the forty dollar amount, which is specified in Section 1821, and our independent review has uncovered no such authorization. We recognize that, under Minnesota law, the costs of defending against an insurer's action, for a declaration of no insurance coverage, can be assessed against the unsuccessful insurer, but such assessments are limited to declaratory judgment actions in which the insurer has declined any duty to defend. As our Court of Appeals recently explained, in *Chicago Title Insurance Co. v. Federal Deposit Insurance Corp.*, 172 F.3d 601, 605 (8th Cir.1999):

[I]n a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys' fees and costs in the declaratory judgment action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying action.

Citing, *American Standard Ins. Co. v. Le,* 551 N.W.2d 923, 927 (Minn.1996).

The same rule was expressed by the Court, in *Diocese of Winona v. Interstate Fire & Casualty Co.,* as follows:

The Minnesota Supreme Court's encouragement of declaratory judgment actions extends only to those circumstances where there is a claim of a duty to defend. \*\*\* In the present case, the claim asserted relates to the Archdiocese's right to be indemnified, not to a duty to defend.

Where a contract is breached and a suit is brought to enforce the contract, it could in some sense be said that the fees ' incurred are causally related to the breach. That causal relationship, however, does not entitle the prevailing party in such a contract action on an indemnification agreement to recover fees.

[Citations and footnote omitted].

 Our reading of the operative "Jewellers Block Policy" confirms that the policy is for indemnification of lost jewelry, and includes no duty to defend. The policy is also devoid of any agreement, on the Plaintiffs' part, to pay the Defendants' costs in defending against any declaratory judgment claim that either party to the contract may commence. Accordingly, we find no contractual or Federal statutory basis for the Defendants' request for enhanced expert witness fees.

 Although not expressly addressing the matter, we infer from the Defendants' citation to Minnesota case law, for the proposition that the award of expert witness fees is within the Trial Court's discre-

tion, that the Defendants contend that, this being a diversity action, the law of Minnesota should apply. We disagree.[3] As the Defendants acknowledge, the allowance of expert fees, under Minnesota Statutes Section 357.25 is wholly discretionary with the Trial Court.[4] As such, that Section cannot vest litigants, in Federal Court, with a substantive right to an award of expert costs which trumps the forty dollar limitation of Section 1821. The cases which have specifically addressed this issue support our application of Section 1821. See, e.g., *Aceves v. Allstate Insurance Co.*, 68 F.3d 1160, 1167–68 (9th Cir.1995) (concluding that Federal law should control the reimbursement of expert witnesses in Federal Courts sitting in diversity jurisdiction); *Chevalier v. Reliance Insurance Co.*, 953 F.2d 877, 886 (5th Cir.1992) ("[A]bsent an express indication from the Louisiana legislature or its courts, of Louisiana's special interest in providing litigants with recovery of expert witness fees in personal injury actions, federal law controls the award of such fees as costs."); *Ruiz–Rodriguez v. Colberg–Comas*, 882 F.2d 15, 18 (1st Cir.1989); *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 799 (7th Cir.1989); *Chaparral Resources, Inc. v. Monsanto Co.*, 849 F.2d 1286, 1291–92 (10th Cir.1988); *Kivi v. Nationwide Mutual Insurance Co.*, 695 F.2d 1285, 1289 (11th Cir.1983).

Although we have found no decision, within this Circuit, which has explicitly undertaken an *Erie*-type analysis, see, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), with specific respect to the taxation of expert witness fees under Section 1821 as opposed to a State statute, in a diversity case, the decisions we have cited, from foreign jurisdictions, have considered the *Erie* implications, and have found Section 1821 to be controlling. In addition, vintage authority, within this District and this Circuit, has held, in what appear to be diversity proceedings, that the fee cap, in Section 1821, applies in contradistinction to discretionary awards of expert witness fees. See, *American Steel Works v. Hurley Construction Co.*, 46 F.R.D. 465, 468–69 (D.Minn.1969) ("The general rule is that an expert witness is entitled only to the regular statutory witness fees and the costs actually incurred above this amount are not taxable."); *Hill v. Gonzalez*, 53 F.R.D. 1, 3 (D.Minn.1971) (same); *Murphy v. Amoco Production Co.*, 558 F.Supp. 591, 594 (D.N.D.1983) ("The majority view among the circuits holds that expert witness costs in federal courts are limited by 28 U.S.C. § 1821," and "[t]here are no persuasive reasons for applying a different rule in diversity cases."), aff'd. on other grounds, 729 F.2d 552 (1984). We find no persuasive authorities to the contrary[5]

3. In their Memorandum in Support of Bill of Costs, the Defendants quote our reference to Minnesota law, on the taxation of costs and disbursements in Minnesota Courts, and we may infer that this reference misguided the parties in their briefing on the allowability of expert fees, as the Plaintiffs urge us to limit the award of fees to $300 which, by every appearance, is an implicit adoption of Rule 127, Minnesota Rules of General Practice. Our reference to Minnesota law was improvident for, upon closer review, we find that law to be inapposite.

4. Minnesota Statutes Section 357.25 provides as follows:

The judge of any court of record, before whom any witness is summoned or sworn and examined as an expert in any profession or calling, may allow such fees or

compensation as may be just and reasonable.

5. Our conclusion, that Minnesota Statutes Section 357.25 is procedural and, therefore, is superseded by Section 1821, even in the context of diversity cases, is supported by the Supreme Court's analysis, in *Henkel v. Chicago, St. Paul, Minneapolis & Ohama Ry.*, 284 U.S. 444, 446–47, 52 S.Ct. 223, 76 L.Ed. 386 (1932), where the Supreme Court compared the precursors to Sections 357.25, and 1821, and concluded that, as a procedural matter, Section 1821 governs in Federal Courts, albeit in the context of an action under the Federal Employee's Liability Act. In our view, since Section 357.25 does not vest the prevailing party with any substantive entitlement to expert witness fees, but only provides a procedural mechanism by which a Court may grant in whole, or in part, or may deny such fees,

and, therefore, we limit the Defendants' requested witness fees, for their lay and expert witnesses, to the forty dollar a day limit of Section 1821.[6]

■ Applying this rule, we conclude that the Defendants are entitled to an $80.00 attendance fee for Dorsey,[7] and a $40 attendance fee for Yarbrough and Walz. As for Crowley, he is entitled to a $40 attendance fee, but the mileage and subsistence[8] is attributable to the Defendants' counsel—not to Crowley—and, therefore, is not properly taxable.

■ Lastly, the Defendants claim photocopying costs of $1,343.50. Photocopying expenses can be recoverable, under Title 28 U.S.C. § 1921(4), which allows a reimbursement, to a prevailing party, of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." Not all photocopying costs are subject to taxation. As the Court recently explained, in *Emmenegger v. Bull Moose Tube Co.*, 33 F.Supp.2d 1127, 1133 (E.D.Mo.1998):

> Section 1981 should prevail as the controlling provision, under an *Erie* analysis. We cannot foreclose the potential that litigants, who are interested in a greater latitude in the recovery of expert witness fees, might be more inclined to commence their action in the State Courts within this District, but that latitude has a two-edged quality, as whichever side prevails could seek such fees. More importantly, as a Federal Court, we should apply our procedural rules and practices without regard to the extent that such procedural matters may induce, or discourage, a resort to the Federal Courts. The fact that a State tribunal, for whatever reason, might allow cases to languish on their journey to Trial, would not properly counsel a similar approach, in the Federal Courts, in order to establish some form of equanimity between the State and Federal procedures.

6. While it may be argued that we should adopt the Plaintiffs' position, and award expert witness fees in the amount of $300.00, we conclude that we have no discretion to award such fees, under the circumstances here, in excess of the forty dollar cap prescribed by Section 1821. See, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (holding that, when a prevailing party seeks

Under subsection (4) of § 1920, plaintiffs could have legitimately listed amounts paid to others for production of documents, or could have charged their own photocopying expenses for copying the numerous exhibits that they introduced at trial. Under the cost statute, however, plaintiffs may not recover the photocopying expenses that they incurred in copying their own pleadings and motions for filing with the Court, serving on opposing counsel, or transmitting to their clients; nor does the cost statute cover a party's copying of documents to be produced in discovery, or copying research materials for the convenience of counsel. These are not taxable costs under the statute, because they are not copies of papers "necessarily obtained for use in the case." See *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir.1990); *Thomas v. Treasury Management Ass'n*, 158 F.R.D. 364, 372 (D.Md.1994); cf. *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir.

reimbursement for fees paid to its own expert witnesses, a Federal Court is bound by the limits of Section 1821 where, as here, a different fee is not required by contract or explicit statutory authority).

We also add that the limitation of expert witnesses, to the statutory cap of forty dollars, is the standard practice of the Clerk of Court in this District.

7. The Trial was conducted with dispatch, and counsel were forewarned that the availability of witnesses should not deter the progress of the Trial. Accordingly, we believe that Dorsey is entitled to his attendance fee, and the subsistence that he claims, in the amount of $91.58.

8. The Defendants' Bill of Costs had an arithmetic error relating to the claimed subsistence of Crowley. Although $88.88 is the documented amount of subsistence, when that figure is added to the claimed expert witness fees, the subsistence was rounded off to $88.00. Since we do not tax this subsistence amount, and for convenience, as all of the Defendants' totals were impacted by that error, we have rounded the figure of $88.88 to $88.00 in our Table on Page 2.

1995) (holding that the district court did not abuse its discretion in denying, inter alia, "costs for 'internal copying' of documents by [prevailing defendant's] counsel produced for discovery"). Because plaintiffs have failed to segregate their properly taxable photocopying costs, none of the photocopying charges that they claim will be taxed as costs.

Here, the Defendants have categorized their photocopying charges, and we allow them to tax the 649 pages of Trial Exhibits, and the 772 copies of Exhibits for Summary Judgment.[9] Allowing copying charges at fifty cents a page, produces taxable photocopying charges of $710.50.

In sum, the Defendants are entitled to a total of $3,191.27 in taxable costs, and we enter Judgment to that effect.[10]

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendants are entitled to taxable costs in the amount of $3,191.27.

2. That the Clerk of Court should enter Judgment accordingly.

---

**9.** Given the growing importance of Rule 56, Federal Rules of Civil Procedure, we believe that the Exhibits, which are employed to stave, or to support, the grant of Summary Judgment, are "papers necessarily obtained for use in the case." *Title 28 U.S.C. § 1920(4).*

**10.** For convenience, the breakdown of the taxable costs are as follows:

| | |
|---|---|
| $2,189.19 | costs and expenses stipulated, as taxable, by Plaintiffs |
| 200.00 | witness attendance fees |
| 91.58 | subsistence for Dorsey |
| 710.50 | photocopying charges |
| $3,191.27 | TOTAL |